GARY SMITH, Plaintiff-Appellant, v. UNITED FARM MUTUAL REIN-SURANCE *et al.*, Defendants-Appellees.

Fifth District   No. 5—91—0838

Opinion filed August 30, 1993.

RARICK, J., dissenting.

Louis P. Johnson, of Johnson & Johnson, of Metropolis, for appellant.

William J. Novick, of Fowler & Novick, of Marion, for appellees Ron Clark Insurance, Inc., and Ron Clark.

William Kent Brandon and Stephen W. Stone, both of Brandon, Schmidt & Palmer, of Carbondale, for appellee United Farm Mutual Reinsurance.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

This appeal is from the circuit court's orders granting summary judgment in favor of the defendants and denying plaintiff's motion for summary judgment. We reverse and remand.

In January of 1984, Gary Smith purchased a homeowner's policy from United Farm Mutual Reinsurance (United Farm) through his insurance broker, Ron Clark Insurance, Inc. (Agency), and paid the premium through July 20, 1984. On May 22, 1984, plaintiff's wife Beatrice Smith advised an employee at the Agency that she and her husband would be moving to Florida and that they had rented their house in Eldorado, Illinois, to the Shivley family. Cecile Weidemann, an employee at the Agency, advised Beatrice Smith that the homeowner's policy would have to be cancelled and that a renter's policy would be issued. Weidemann signed Gary Smith's name to a policy-release statement, signed her own name as a witness, and then forwarded the document to United Farm, which cancelled the homeowner's policy and issued a refund check. This check was forwarded to the plaintiff in Florida. A renter's policy was also forwarded to the plaintiff. Plaintiff cashed the refund check. Thereafter, United Farm sent a premium statement for the renter's policy to the Smiths' address in De Land, Florida, and required payment of $51 by June 14, 1984, in order to maintain the renter's policy. Plaintiff did not pay the premium by June 14, 1984. During June of 1984, the Smiths moved from De Land, Florida, to Lake Helen, Florida, but did not inform United Farm or the Agency of their new address.

United Farm maintains that on June 22, 1984, it mailed notice of cancellation of the renter's policy for nonpayment of premium to De Land, Florida, the last residence known to United Farm. The notice stated that the cancellation was to become effective on July 2, 1984. Plaintiff denies receiving a notice of cancellation on either the homeowner's or renter's policy. The Smiths returned to Illinois at the end of June 1984. On approximately July 2, 1984, plaintiff received an additional premium statement that gave him until August 23, 1984, to pay the premium on the renter's policy.

On July 12, 1984, plaintiff was told via telephone that his house was on fire. En route to the fire plaintiff and his wife stopped at the Agency and paid the premium on the renter's policy. Subsequently, the Agency returned the premium and denied the claim. Plaintiff filed suit claiming coverage under either the homeowner's

insurance policy or the renter's policy. All parties filed motions for summary judgment, and the court entered summary judgment in favor of the defendants and against the plaintiff. Plaintiff appeals.

■ Before considering the summary judgment issue, it is necessary to first address plaintiff's argument that the trial court erred in striking his and his wife's affidavits which were filed in opposition to United Farm's motion for summary judgment.

With regard to the affidavit of Gary Smith, the trial court based its ruling on its finding that the affidavit of Gary Smith contained hearsay, was conclusory, and was not based entirely on Gary Smith's personal knowledge. Plaintiff submits that the affidavit is completely supported by admitted documentary evidence in the record. He argues that the purpose of the affidavit was to correct the mistakes he made in his deposition. The affidavit provides in pertinent part:

"1. That I am the Plaintiff in this case, because my name is on the insurance policies that are described in the complaint.

2. That my wife, Beatrice Smith, had the sole contact with the insurance company, and I had no contact whatsoever with the insurance company, or the insurance agency between the dates of May 22, 1984, and July 12, 1984. Even the mailings were received by my wife, especially down in Florida.

3. If I am called to testify at the trial, I will testify under oath that when I gave my deposition on November 21, 1986, I made several errors. In the first place, I seldom received the mail. My wife, Beatrice, received the mail. I did not pay much attention to what was received in the mail, because I knew that my policy was paid up until the middle of July, and I did not figure that we could be without coverage no matter what bills the insurance company sent.

4. A [sic] the deposition, I was studying the documents and testifying from the insurance policies and the premium notices and the refund notice, all of which were attached to the complaint.

I never saw a cancelled policy, so when I said on Page 16 'that I received a cancelled policy and a check,' I was totally wrong. I must have taken that from the letter dated June 1, 1984, that says:

'Mr. and Mrs. Smith, Enclosed please find your new policy showing rental dwelling. Premium due of $51.00 by June 14, 1984. You will receive a refund shortly from can-

cellation of your previous policy. Thanks, Cecile K. Weidemann.'

5. At the deposition, I looked at the $29.00 refund statement, and I surmised that I received the B.W. policy attached to the complaint with the refund check, but I learned from my wife, Beatrice, that that is not so. The refund check came toward the end of June and there was no policy with it, just Exhibit 1. Ron Clark and the other insurance people told me that right after the fire, that [*sic*] I had been cancelled out and I guess I just took them at their word. Even my attorney thought that I had signed a cancellation of the first policy because the insurance company told him that I did. When he finally got a copy of the cancellation, I showed him that I never signed it nor had I gone to Ron Clark's office before July 12, 1984, so I could not have signed it. Only then did he realize that the first policy was never cancelled.

I have read my wife's Affidavit and I will adopt it completely. It comes back to me that the parts that I was aware of happened just as she said it. It is unfortunate that I was called for the deposition because I knew far less about what happened than Beatrice did."

Under Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)), an affidavit submitted in connection with a motion for summary judgment under section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1992)) shall be made on the personal knowledge of the affiant and shall not consist of conclusions but of facts admissible in evidence. Parts of paragraphs 3 and 4 and most of paragraph 5 of Gary Smith's affidavit contain conclusory statements as to plaintiff's beliefs and possible reasons why plaintiff may have testified the way he did at his deposition. In addition, paragraph 5 relates statements made by others to the affiant and the purported beliefs of others. These paragraphs contain conclusory and hearsay statements and do not meet with the requirements of Rule 191(a). (See *Kalb v. Village of Oak Lawn* (1984), 128 Ill. App. 3d 481, 470 N.E.2d 1268; *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1977), 53 Ill. App. 3d 443, 368 N.E.2d 644.) The trial court did not err in striking Gary Smith's affidavit. Because of our determination, we decline to reach defendant's argument that the affidavit in question was properly stricken because it contained statements which contradicted the judicial admissions made in the affiant's deposition.

As for Beatrice Smith's affidavit, the court struck it because the court found it contained hearsay, was conclusory, and was not based entirely upon her personal knowledge. Supreme Court Rule 191 is satisfied if from the affidavit as a whole it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 576, 442 N.E.2d 648, 654; *Houser v. State Farm Insurance Co.* (1989), 193 Ill. App. 3d 125, 549 N.E.2d 17.) The affidavit submitted by Beatrice Smith contains evidentiary facts, which would reasonably appear to be within her personal knowledge. The affidavit contains specific facts setting forth the circumstances leading up to the dispute as to whether the homeowner's policy was in fact validly cancelled. We find that the trial court erred in striking Beatrice Smith's affidavit.

We now turn to the issue of whether the trial court erred in granting defendants' motions for summary judgment and denying plaintiff's motion for summary judgment.

A motion for summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992); *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552, 555.) An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists. (*Addison*, 124 Ill. 2d at 294, 529 N.E.2d at 555.) With this in mind, we turn to the facts as they existed at the time the orders were entered, addressing each insurance policy separately.

### HOMEOWNER'S POLICY

■ The homeowner's policy could be cancelled at any time at the request of the insured upon return of the policy to the home office. Under the policy terms, the insurer could cancel the policy for nonpayment of premiums. For reasons other than nonpayment of premiums, the insurer could cancel by mailing notice of cancellation to the insured, at the last mailing address known by the company, at least 30 days prior to the effective date of cancellation. In addition, the insurer could cancel the policy, for reasons stated, if the policy had been in effect for one year or was a renewal policy.

It is undisputed that the homeowner's policy was initially paid in full through July 20, 1984. It is further undisputed that the pol-

icy had not been in effect for one year and was not a renewal policy. Thus, the policy could be cancelled by the insurer only if the insured surrendered the policy or if the insurer gave notice of cancellation at least 30 days prior to the effective date of cancellation.

On the question of whether plaintiff surrendered the policy, the record reveals the following facts. Cecile Weidemann, an employee of the Agency, testified in her affidavit that she advised Beatrice Smith that the homeowner's policy would have to be canceled and that Weidemann would cancel it and would rewrite a renter's policy. In his deposition Gary Smith stated that he received a copy of the cancelled homeowner's policy while he was in De Land, Florida. Beatrice Smith testified in her affidavit that at no time did she request cancellation of the policy and that she was not advised that it would be cancelled. Beatrice Smith further testified that she never surrendered the homeowner's policy to the defendants and has always had it in her possession except for turning it over to her attorney for this lawsuit. Under these facts the question of surrender of the policy is disputed. In addition, a question arises whether plaintiff requested that defendants cancel his policy. The Agency admits that its employee signed the plaintiff's name to a cancellation/policy-release form regarding the homeowner's policy. Thus, there is evidence that the insured did not request cancellation of the homeowner's policy.

As for the insurer's right to cancel by giving 30 days' notice of cancellation, Beatrice and Gary Smith deny receiving notice of cancellation on the homeowner's policy. The defendants contend that Smith's receipt of the refund check, dated June 15, 1984, constituted 30-day notice of cancellation of the policy. This argument is not well-founded as the check is dated June 15 and the fire occurred on July 12, less then 30 days after the date of the check.

Based on these disputed material facts, we believe the trial court erred in granting summary judgment to the defendants with regard to the homeowner's policy.

RENTER'S POLICY

Beatrice Smith notified the Agency in May of 1984 that her family was moving to Florida and that they had rented their house. Beatrice was advised by the insurance representative, Cecile Weidemann, that the homeowner's policy would have to be changed to a renter's policy. The Agency admits in its brief that Cecile Weidemann signed the insured's, Gary Smith's, name to the policy-release

statement and mailed it to United Farm so that a renter's policy could be issued. The Agency states in its brief that this procedure was taken in accordance with what Weidemann told Beatrice the Agency would do.

Plaintiff admits in his deposition that he received the renter's policy and a note while in De Land, Florida. The note read:

> "Mr. and Mrs. Smith:
>     Enclosed is your new policy showing rental dwelling. Premium due is $51.00. You will receive a refund shortly from cancellation of your previous policy.
>                                       Thanks,
>                                       Cecile Weidemann"

Beatrice testified in her affidavit that the renter's policy looked just like the homeowner's policy, except that the renter's policy excluded the contents of the house from coverage. Beatrice's affidavit stated that she believed any refund they would receive would be from deleting the contents of the house from coverage. Beatrice testified that on June 8 or 9, 1984, she and her husband received a premium notice for $51, payable by June 14, 1984. Plaintiff did not pay the premium by that date. Beatrice and Gary both testified that upon returning to Illinois around July 1, 1984, they received a second premium statement on the renter's policy, which indicated that the premium was due August 23, 1984.

United Farm claims that on June 22, 1984, it mailed a notice of cancellation of the renter's policy for nonpayment of premium to De Land, Florida. Section 143.15 of the Illinois Insurance Code (215 ILCS 5/143.15 (West 1992)) and the terms of the renter's policy itself provide that where cancellation is for nonpayment of premium, at least 10 days' notice of cancellation shall be given. Included in the record is a copy of a "Notice of Cancellation" addressed to Gary Smith in De Land, Florida, postmarked June 22, 1984, advising the Smiths of the July 2, 1984, cancellation date. The Smiths moved from De Land to Lake Helen, Florida, in June and did not advise defendants of their new address. The Smiths deny receiving the notice of cancellation. Plaintiff paid the $51 premium on the renter's policy on July 12, 1984.

To have granted summary judgment in this case the trial court must have impermissibly drawn conclusions from disputed facts even though a reasonable person could have drawn different conclusions from the same facts. (See *Krishna*, 53 Ill. App. 3d at 456, 368 N.E.2d at 652.) Given the dispute over the cancellation of the policy versus an

extension of the due date on the premium, we find the trial court erred in granting summary judgment.

The order of the trial court granting summary judgment for defendants is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

WELCH, J., concurs.

JUSTICE RARICK, dissenting:

I respectfully dissent. After reviewing the affidavits of Beatrice Smith that were filed in opposition to defendant's motion for summary judgment, I conclude that they were properly stricken by the trial court. As the trial court found, the affidavits contain hearsay statements, are conclusory, and are not based entirely upon her personal knowledge. They are therefore insufficient under Supreme Court Rule 191. 134 Ill. 2d R. 191.

In the absence of Beatrice Smith's affidavit, there is nothing to contradict the affidavit of Cecile Weidemann and the deposition testimony of Gary Smith, both of which demonstrate unequivocally that the homeowner's policy was cancelled. Indeed, in the absence of Beatrice's affidavits, the record clearly demonstrates that the homeowner's policy was cancelled at the Smiths' request.

With respect to the renter's policy, the record demonstrates that defendant mailed notice of cancellation on June 22, 1984, advising plaintiffs that their renter's policy would be cancelled for nonpayment of premium as of July 2, 1984. This notice was sent to plaintiff's last-known address. Although plaintiffs had by this time moved back to Illinois, they did not inform defendants of this fact. Finally, Gary Smith admitted in his deposition testimony that the premium notice stated that the premium was due by June 14, 1989, and that he did not pay it by that date. The majority notes that the Smiths received a premium notice indicating a due date of August 23, 1984. Reviewing the record, particularly the renter's policy and the premium notice, it is clear to me that this notice was not an extension of time. The policy provides that premium payments were to be made quarterly. The premium notice indicates that payment by August 23, 1984, would keep the policy in effect for three months. The policy was issued on May 23, 1984, and the premium notice with the August 23, 1984, due date was clearly the bill for the *second* payment.

Based upon the foregoing, I would affirm the trial court's grant of summary judgment for the defendant.