(No. 96402.—

*In re* ESTATE OF LEVI E. SCHLENKER, Deceased (Imogene Rodgers, Appellee, v. Troy Schlenker, Ex'r, *et al.* (Troy Schlenker, Appellant)).

*Opinion filed April 1, 2004.*

458

Richard Kruger, of Kruger, Henry & Hunter, of Metropolis, for appellant.

No appearance for appellee.

JUSTICE RARICK delivered the opinion of the court:

Imogene Rodgers filed a petition in the circuit court of Union County pursuant to section 8—1 of the Probate Act of 1975 (755 ILCS 5/8—1 (West 2002)) to contest the validity of her father's will. The executor of the father's estate moved to dismiss Imogene's petition under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)) based on lack of standing. The motion to dismiss was granted. The appellate court reversed and remanded. 338 Ill. App. 3d 761. We granted the executor's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm the appellate court's judgment.

The pertinent facts are undisputed. The father, Levi E. Schlenker, died on July 16, 2001. His wife, Blanche, had predeceased him, as had two of the couple's four children, Darrell and Johnnie. The father was survived by his remaining two children, a daughter named Imogene Rodgers and a son named Troy, both of whom were adults. The father was also survived three grandchildren, Bradley Schlenker and Ashley Schlenker Funk, who were the offspring of his deceased son Darrell, and Brian Rodgers, who was Imogene's child.

Prior to his death, the father had allegedly executed

four separate wills. The first was dated February 14, 1990. The last bore the date January 4, 2001. Only three of the wills have been found. These include both the February 14, 1990, and the January 4, 2001, wills, as well as a will dated September 16, 1998.

Following the father's death, a petition was filed in the circuit court of Union County to have the January 4, 2001, will admitted to probate. See 755 ILCS 5/6—2 (West 2002). On August 22, 2001, the court entered an order admitting that will to probate and issuing letters testamentary to the executor. The person appointed executor was Troy, the father's surviving son.

Had the father died intestate, Imogene and Troy, his two surviving children, would each have inherited a one-third share of his real and personal property under the Illinois rules of descent and distribution. The remaining one-third share would have been divided equally between Bradley and Ashley, the two surviving children of his deceased son Darrell. 755 ILCS 5/2—1(b) (West 2002). Under the January 4, 2001, will admitted to probate, Imogene, Bradley and Ashley received nothing. They were expressly excluded from the will, as was Imogene's son, Brian.

Within the period prescribed by statute, Imogene filed a petition under section 8—1 of the Probate Act (755 ILCS 5/8—1 (West 2002)) to contest the will's validity. As grounds for her petition, Imogene asserted that her father had been impaired by a variety of physical and mental conditions, including severe and chronic illnesses, and lacked the mental capacity to make decisions regarding the disposition of his property. Imogene further asserted that her brother Troy had breached fiduciary duties he owed their father and exerted undue influence over him.

Acting in his role as executor, Troy moved to dismiss Imogene's petition pursuant to section 2—619(a)(9) of

the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)). Troy's motion argued that Imogene lacked standing to contest the January 4, 2001, will because a ruling on the will's validity would not affect her position. Even if Imogene's allegations proved true and the January 4 will were declared to be invalid, there was still the matter of her father's three prior wills. According to Troy, Imogene stood to receive nothing under those wills just as she stood to receive nothing under the January 4, 2001, will. As a result, the only possible way Imogene could ever claim a legally cognizable interest in her father's estate is by showing that all of the prior wills were invalid too. Imogene's present petition, however, made no attempt to do that. It was concerned exclusively with the January 4 will. The prior wills were not challenged.

The circuit court found Troy's position to be meritorious and granted his motion to dismiss. Imogene appealed. The appellate court reversed and remanded for further proceedings. It held that because Imogene was an heir who would inherit from her father's estate if it was determined that the estate should be distributed under this state's laws of intestacy, admission of the January 4, 2001, will to probate would have a detrimental effect on her pecuniary interests. In the appellate court's opinion, that was sufficient to confer on her the right to bring this will contest. Validity of the previous wills, which have not yet been submitted or proved, did not have to be resolved first. "While judicial economy may be best served if the 2001 will and all prior wills are considered successively in a single action," the court observed, the parties were not required to follow that approach. 338 Ill. App. 3d at 764.

Troy, as executor of his father's estate, petitioned our court for leave to appeal from the appellate court's judgment. We allowed that petition (177 Ill. 2d R. 315), and

the matter is now before us for review. As indicated earlier in this opinion, the appeal arises in the context of an order dismissing Imogene's will contest petition pursuant to section 2—619(a)(9) of the Code of Civil Procedure. Section 2—619(a)(9) permits involuntary dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2002). The phrase "affirmative matter" refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. The affirmative matter asserted by Troy in this case is Imogene's lack of standing. Our precedent makes clear that lack of standing qualifies as "affirmative matter" within the meaning of section 2—619(a)(9) and may properly be challenged through a motion to dismiss under that statute. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

Under Illinois law, a plaintiff need not allege facts establishing standing. Rather, it is the defendant's burden to plead and prove lack of standing. Where standing is challenged in a motion to dismiss under section 2—619, a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in plaintiff's favor. The court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). An order granting a motion to dismiss based on lack of standing presents a question of law which we review *de novo. Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002).

The right to contest the validity of a will is purely statutory. It must be exercised by the person or persons, in the manner, and within the time prescribed by the

Probate Act. *Handley v. Conlan,* 342 Ill. 562, 565 (1931). Section 8—1 of the Probate Act of 1975 (755 ILCS 5/8—1 (West 2002)) provides that a petition to contest the validity of a will may be filed by "any interested person." An "interested person" is defined by the Probate Act as

> "one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, *including without limitation an heir,* legatee, creditor, person entitled to a spouse's or child's award and the representative." (Emphasis added.) 755 ILCS 5/1—2.11 (West 2002).

The text of this statute specifically includes heirs in the definition of "interested persons." "[T]he word 'heir' in its primary meaning designates the person appointed by law to succeed to the estate in case of intestacy." *McCormick v. Sanford,* 318 Ill. 544, 547 (1925). Stated another way, it refers to anyone who would take from a person's estate under the statute of descent and distribution if that person died without leaving a will. See 6 Ill. Jur. *Probate, Estates & Trusts* § 2.02 (2001). Imogene is such a person. As noted earlier in this opinion, had her father died intestate, she would have inherited a one-third share of his real and personal property under the Illinois rules of descent and distribution. Imogene therefore meets the statutory definition of "interested person" and is entitled to file a petition to contest the validity of her father's will under section 8—1 of the Probate Act (755 ILCS 5/8—1 (West 2002)).

That Imogene's father may have executed other, earlier wills does not disqualify her from petitioning to contest the January 4, 2001, will. That is so for several reasons. First, whether any of the prior wills will prove to be valid is speculative. At this stage of the proceedings, there is no evidence to support their validity, and no rule of law authorizes us to presume that Troy, the executor, will succeed in establishing that they are valid.

See *In re Estate of Knowlson*, 154 Ill. App. 3d 249, 252-53 (1987). To the contrary, our presumption must be that none of those wills have any legal effect. The will dated January 4 declared that it was revoking all prior wills. The wills dated September 16, 1998, and February 14, 1990, contained the same declaration. Such declarations are one of the means authorized by statute for revoking prior wills. See 755 ILCS 5/4—7(a) (West 2002). Where a prior will has been totally revoked, as the earlier wills here were, it

> "is not revived other than by its re-execution or by an instrument declaring the revival and signed and attested in the manner prescribed by [the Probate Act] for the signing and attestation of a will." 755 ILCS 5/4—7(c) (West 2002).

There is no indication that the father reexecuted any of the prior wills or executed the instruments necessary to revive them. At this stage of the proceedings, we must therefore regard all of the prior wills as void. Because they are void, they have no force or effect. It is as if they never existed. Accordingly, they cannot be used to assess Imogene's right to challenge her father's fourth and final will.

Troy's challenge to Imogene's standing to challenge the fourth will is flawed for another reason as well. It assumes that Imogene would be no better off under any of the earlier wills than she is under the one dated January 4, 2001. The materials before us, however, do not substantiate that claim. The second will, dated December 9, 1993, has never been produced. Troy's motion to dismiss states that neither he nor his attorney has a copy of it.

Troy was able to produce what purports to be the father's first will. In contrast to the fourth will, however, the first will did not exclude Imogene. To the contrary, it established a trust to provide a home for Imogene and her son and to pay for their support, education, and medi-

cal expenses. Although the present record suggests that the real estate that was to be placed into this trust was no longer owned by the father at the time of his death, whether that is so and how it would affect disposition of the father's estate if the will's provisions were implemented remains undetermined.

Troy attempts to sidestep these deficiencies by shifting the burden of pleading and proof to Imogene. He contends that he had no obligation to substantiate his claims that she lacked standing. In his view, the burden was on Imogene to allege and establish sufficient facts to show that the requisite standing existed. That is precisely opposite of what the law demands. We made the point earlier in this disposition and we will repeat it here. Because lack of standing is an affirmative defense, a plaintiff is not required to plead and prove that standing is proper. Rather, it is the defendant's burden to plead and prove lack of standing. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d at 206.

Troy's contention that the intervening wills deprive Imogene of standing must fail for a final and more fundamental reason: it imposes limitations on standing that section 8—1 of the Probate Act (755 ILCS 5/8—1 (West 2002)) does not require. Under Troy's analysis, the right of an heir to contest the validity of a will is qualified by the provisions of other wills. Whenever an earlier will had been executed, Troy's analysis would preclude an heir from contesting a subsequent will unless the heir could show that the testator treated him more generously in the prior will.

The statute itself includes no such requirement. Under the plain and unambiguous language of the Probate Act, one's status as an heir is sufficient, in itself, to confer standing to contest a will's validity. If you are an heir, you qualify as a matter of law as an "interested

person" (755 ILCS 5/1—2.11 (West 2002)) entitled to bring a petition under section 8—1 of the Act (755 ILCS 5/8—1 (West 2002)). What you stand to receive under the challenged will or any prior wills is irrelevant.

That an heir's right to challenge a will is not dependent on the provisions of prior wills is implicit in the very definition of what constitutes an heir. As noted earlier in this disposition, who qualifies as an heir is determined not by the contents of a decedent's will, but by whether a person would inherit under the laws of descent and distribution if the decedent had died intestate, *i.e.*, if no will existed at all. Because the relevant measure of an heir's eligibility to contest a will is based on his status in the absence of a will, it would be incongruous to condition an heir's right to file a petition under section 8—1 of the Act based on what, if anything, he stood to receive under a prior will's provisions.

In urging a contrary result, Troy relies on *In re Estate of Keener*, 167 Ill. App. 3d 270 (1988). That case, however, is inapposite. The petitioner whose standing was challenged there was the wife of one of the testator's surviving grandchildren. Under section 2—1 of the Probate Act (755 ILCS 5/2—1 (West 2002)), which sets forth this state's rules of descent and distribution, she would not have been entitled to any portion of the testator's estate had the testator died without leaving a will. Unlike the petitioner in this case, she therefore did not qualify as an heir. Her only status was as a legatee under a will that had been superceded by four subsequent wills. Because a legatee's status is determined by testamentary disposition, that case is of no usefulness in assessing the standing of an heir, whose status is determined by whether the person would inherit in the absence of a will.

Troy argues that administration of estates would be more stable, orderly and timely if heirs were required to plead and prove their entitlement to recover under a

prior will as a condition to challenging a subsequent will. Such issues, however, are for the General Assembly to consider. Under the law as it is presently drafted, heirs such as Imogene are deemed to be "interested persons" and have the right to petition to challenge a will without regard to whether or how much they might inherit under a prior will. That is the end of our inquiry. Where a statute is clear and unambiguous, we cannot restrict or enlarge its meaning. Rather, we must interpret and apply it in the manner in which it was written. We cannot rewrite a statute to make it consistent with the court's idea of orderliness and public policy. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95 (1998).

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE GARMAN, specially concurring:

I agree that Imogene has standing to contest Levi's most recent will, regardless of her status under the prior wills. I would reach that result for different reasons than the majority. I write separately because I believe that the majority's analysis is flawed.

The majority premises its conclusion that Imogene has standing on the Probate Act's "plain and unambiguous language" that "one's status as an heir is sufficient, in itself, to confer standing to contest a will's validity." 209 Ill. 2d at 464. The majority notes that the Probate Act provides that " 'any interested person' " may contest a will. 209 Ill. 2d at 462, quoting 755 ILCS 5/8—1 (West 2002). Then the majority quotes the Probate Act's definition of "interested person," which states that an interested person is:

> " 'one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, *including without limitation an heir*, legatee,

creditor, person entitled to a spouse's child or child's award and the representative.' (Emphasis added.)" 209 Ill. 2d at 462, quoting 755 ILCS 5/1—2.11 (West 2002).

The majority reads the italicized language to mean that heirs have standing as a matter of law and concludes that Imogene, as an heir, has standing regardless of prior wills. 209 Ill. 2d at 462, 464. For the following reasons, I believe the quoted language is ambiguous and the majority's interpretation is an improper way to resolve the ambiguity.

First, the majority's reading renders the first part of the definition—"one who has or represents a financial interest, property right, or fiduciary status \*\*\* which may be affected"—completely superfluous when heirs, legatees or creditors are at issue. In other words, the majority believes the definition means that an heir is an "interested person" regardless of whether there is any effect on her interests. Surely, an "interested person" should actually have an affected interest. If the legislature really intended to say that heirs are interested persons as a matter of law, it would have said an interested person is an heir, legatee, creditor *or* a person who has or represents a financial interest which may be affected. The legislature did not utilize that definition. A more rational reading of what the legislature said is that heirs, legatees and the others are *examples* of those who will typically have an interest affected by a probate proceeding. Since the language can be read in at least two different ways, the definition of "interested person" is ambiguous.

The majority's interpretation of the definition fails for at least two reasons. First, under the majority's reading, creditors are also interested persons as a matter of law, because the definition of "interested person" lists creditors along with heirs. As the majority notes, " 'any interested person' " has standing to contest a will. 209 Ill. 2d at 462, citing 755 ILCS 5/8—1 (West 2002). It is

hard to believe the legislature intended to grant creditors standing to contest wills regardless of whether they have an interest actually affected by the will. Consider the following example. A creditor has a claim, but the amount is in dispute. He says to the executor, "Pay me the amount *I* say is owed, or I will tie up the estate by filing a will contest." If creditors are "interested persons" as a matter of law, his threat may have to be taken seriously even if what he gets paid has nothing to do with the validity of the will.

Second, even if the majority could somehow escape the consequence that creditors have standing as a matter of law, it is problematic to grant heirs standing as a matter of law. 209 Ill. 2d at 464-65. Consider the following possibility. Testator T has three heirs, A, B and C. T's will gives half to A and B each, and nothing to C. Under intestacy each gets a third. According to the majority, the Probate Act not only allows C, but also A and B, to contest the will. Why would A, for example, do so? Perhaps A feels C has been wronged through B's undue influence on T. Perhaps A always said T was crazy and is now glad to pay for the opportunity to prove it in a court of law. In general, a party has standing only if he suffers some injury in fact to a legally cognizable interest. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999), citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). It is an odd view of standing, to put it mildly, that lets a private person litigate just to right a wrong done entirely to someone else or just to make a point. The majority's view of the Probate Act's definition of "interested person" reads this anomaly into the statute.

The majority offers another reason why the prior wills cannot affect Imogene's standing. The majority contends that, because the most recent will revokes all prior wills, the prior wills are void and therefore we can-

not refer to them to determine whether Imogene has standing. 209 Ill. 2d at 463. The majority correctly points out that a subsequent will may revoke a prior will. A will, however, is not effective for any purpose until it is admitted to probate. *Crooker v. McArdle*, 332 Ill. 27 (1928). An order admitting a will to probate is not final as to the validity of the will until the time for filing a will contest has run, and if a contest is timely filed the order has no force or effect for purposes of the contest. *Sternberg v. St. Louis Union Trust Co.*, 394 Ill. 452, 459 (1946). Thus in this case the prior wills have not been not revoked by the present will for purposes of the will contest because the present will's admission to probate is currently without effect.

Moreover, if the majority were correct that the prior wills are void, then a plaintiff in a will contest could not be an interested person based on his status as legatee under a prior will revoked by the present will. The prior will would be void and therefore could not be considered for purposes of standing. However, the law in Illinois has long been to the contrary. See, *e.g.*, *Kelley v. First State Bank of Princeton*, 81 Ill. App. 3d 402, 413 (1980); *Wilson v. Bell*, 315 Ill. App. 418, 425 (1942). The majority's reasoning overrules long-standing precedent *sub silentio*. There is no reason to do so to resolve this issue.

The appellate court, in a published opinion that the majority's analysis ignores, reasons that the current will contest would benefit Imogene if successful, because it is the first step toward her avowed goal of challenging and voiding all the wills and taking as an heir. 338 Ill. App. 3d at 764. In other words, because there is nothing remote or speculative about Imogene's interest in voiding all four wills, her interest in taking the first step by voiding this will is not remote or speculative. The majority fails to explain why it does not adopt the appellate court's reasoning. I find it persuasive.

The appellate court cites *In re Estate of Malcolm*, 234 Ill. App. 3d 962 (1992). 338 Ill. App. 3d at 764. *Malcolm* involved three legatees who would each take approximately $200,000 under the testator's first will, while the second and third wills only gave each of them $10,000. They sought to contest the third will. Similar to this case, the executor argued that the plaintiffs were not "interested persons" because their position under the second will was no better than under the third. *Malcolm* held the plaintiffs were interested persons, reasoning that if the necessity of challenging more than one will before realizing a gain were to defeat standing, a wrongdoer could insulate fraud from judicial scrutiny by creating two wills in succession. *Malcolm*, 234 Ill. App. 3d at 966, quoting *In re Estate of Keener*, 167 Ill. App. 3d 270, 274 (1988) (Heiple, J., dissenting). Likewise, if it were the law that Imogene lacks standing because the next three wills in line also give her nothing, that would provide a way to insulate overreaching from judicial scrutiny. We have held that the will contest provisions of the Probate Act should not be interpreted in a way that would work to protect fraud. *Williams v. Crickman*, 81 Ill. 2d 105, 116-17 (1980).

In sum, I find that the appellate court's opinion, *Malcolm* and *Crickman* provide good reasons to reach the same result the majority reaches for the wrong reasons. Therefore, I agree that the judgment of the appellate court should be affirmed, but I respectfully decline to join the majority opinion.