# Illinois Official Reports

## Appellate Court

---

*In re Estate of Zivin*, 2015 IL App (1st) 150606

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF ALMA M. ZIVIN, Deceased (Hebrew University of Jerusalem, Claimant-Appellant, v. Norman Zivin and Sander Allen, Coexecutors of the Estate of Alma M. Zivin, Deceased, and Cotrustees of the Alma M. Zivin Trust dated May 20, 2004, Respondents-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-0606 |
| Filed | December 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-P-06979; the Hon. Susan Coleman, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | A. Charles Kogut and Daniel W. Kaminski, both of Kogut & Associates, of Oak Brook, for appellant.<br><br>Susan H. Booker, of Levun, Goodman & Cohen, Ltd., of Northbrook, for appellees. |
| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

¶ 1      Hebrew University of Jerusalem appeals from an order dismissing its claim against a decedent's estate for lack of standing. The school sued in its capacity as a "beneficial legatee" of a trust created by a will which the decedent, Alma M. Zivin, executed with her husband, Israel Zivin, just prior to his death. To avoid confusion, we will refer to the Zivins, respectfully, by their first names. The coexecutors of Alma's estate persuasively argued in the trial court that the school's claim about a trust created by the couple's bequest should be dismissed pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)), because only the testamentary trustee, not the trust's beneficiary, has authority to bring a claim. The school argues on appeal that it does have standing, or alternatively that the judge should have appointed a trustee *ad litem* to continue the proceeding on the school's behalf. The coexecutors respond the school failed to refute the motion to dismiss with any factual, admissible evidence of standing.

¶ 2      In 1983, the Zivins executed a document entitled "Mutual Last Will and Testament." The premise of Hebrew University's claim is that the 1983 will is both a joint will and a mutual will that benefits the school. The coexecutors vigorously dispute this premise. We have no opinion about the merits of the school's claim and confine our analysis to the preliminary issue of its standing to sue.

¶ 3      The terms "joint will" and "mutual will" are sometimes used incorrectly. *Curry v. Cotton*, 356 Ill. 538, 543, 191 N.E. 307, 309 (1934). Mutual wills are separate instruments of two or more persons which include reciprocal terms by which each testator makes a testamentary disposition in favor of the other. *Curry*, 356 Ill. at 543, 191 N.E. at 309. A joint will is a single testamentary instrument that has been jointly executed by two or more persons to dispose of property that they own in severalty, in common, or jointly. *Rauch v. Rauch*, 112 Ill. App. 3d 198, 200, 445 N.E.2d 77, 79 (1983). A will that is both joint and mutual is a single instrument executed jointly by two or more persons with a mutual or reciprocal provision and which shows on its face that the bequests were made in consideration of each other. *Platz v. Walk*, 3 Ill. 2d 313, 316, 121 N.E.2d 483, 485 (1954).

¶ 4      A joint and mutual will between spouses is a contract that requires the survivor to dispose of the property as the will instructs (*Rauch*, 112 Ill. App. 3d at 200, 445 N.E.2d at 79), and generally a joint will cannot be revoked unless there is joint action of both testators or, in some instances, by either party acting separately but giving notice to the other of the revocation. *Curry*, 356 Ill. at 544, 191 N.E. at 309. Thus, after the death of one of the parties to a joint will, when joint action or notice to the other party is no longer possible, a survivor who benefits from the parties' agreement "is estopped from disposing of the property other than as contemplated in the will." *Rauch*, 112 Ill. App. 3d at 200, 445 N.E.2d at 79-80. Therefore, one court commented that the consequences of a contract not to revoke a will are "serious and far-reaching" because a valid contract prevents the survivor from changing the estate plan even where intervening circumstances have rendered provisions of the joint will "so inappropriate or unfair that the deceased spouse, had he or she lived, would have desired or sanctioned the changes in the testamentary provisions." *Wisler v. McCormack*, 406 N.E.2d 361, 363 (Ind. Ct. App. 1980).

¶ 5      Although not entitled to possession until after the death of the surviving spouse, the third-party beneficiaries of a joint and mutual will are entitled to enforcement of the couple's

contract. *Rauch*, 112 Ill. App. 3d at 200, 445 N.E.2d at 80 (where couple executed joint and mutual will, upon the husband's death, the inheritance rights of the couple's four children vested, and even though one of those children later died, that child's share had vested and had to pass to his widow instead of increasing the inheritance of the three other children); *Ernest v. Chumley*, 403 Ill. App. 3d 710, 936 N.E.2d 602 (2010) (where couple executed separate but mutual wills, the husband's death rendered the couple's contract irrevocable and prevented the wife from disinheriting his children who were entitled to one-quarter of her remaining estate).

¶ 6   There are five hallmarks of a joint and mutual will: generally the testators of a mutual will label their will as such, include reciprocal provisions which dispose of the entire estate in favor of the other testator; pool their interests or merge their estates into a common corpus; have a common dispositive scheme of the joint property; and use plural pronouns and terms such as "we give" and "our estate." *Rauch*, 112 Ill. App. 3d at 200-01, 445 N.E.2d at 79-80 (presence of all five characteristics clearly indicated that a husband and wife intended for their jointly-executed will to be a joint and mutual will); *In re Estate of Signore*, 149 Ill. App. 3d 904, 906, 501 N.E.2d 282, 283 (1986) (setting out eight factors instead of five and concluding that a joint will which had many characteristics of a mutual will rendered irrevocable by the death of the first spouse, was not a mutual will due to a clause stating a document was the couple's " 'Last Will and Testament, with full reservation by both or either of us to change the terms hereof at any time' ").

¶ 7   In the "FIRST" paragraph of the Zivins' "Mutual Last Will and Testament," they directed the payment of all just debts, funeral expenses and administration costs. In the "SECOND" paragraph, Israel stated:

> "That I, DR. ISRAEL ZIVIN, hereby give, devise and bequeath all of my property whether same may be real, personal or mixed, and wheresoever situated or which I may own or have any interest in at the time of my death, including any lapsed legacies, to my beloved wife, ALMA M. ZIVIN, for her sole and exclusive use and benefits forever, in the event that I may predecease her."

The "THIRD" paragraph was identical to the "SECOND" paragraph, other than switching the names and corresponding pronouns. The "FOURTH" paragraph empowered and directed the executors to liquidate "all of our property, regardless whether real, personal or mixed, as soon after the death of the survivor of us, as they may deem practicable." This was followed by:

> "FIFTH: That in the event that we shall both perish in a common disaster, or following the death of the survivor of us, we give, devise and bequeath the rest, residue and remainder of our estate after payments directed under the above provisions, excluding any property over which we have power of appointment, which power we decline to exercise, shall be distributed as follows:
>
> A. 20% thereof to NEAL JAY YANOFSKY of Chestnut Hill, Massachusetts;
>
> B. 10% thereof to DR. SIMON ZIVIN of Lincolnwood, Illinois;
>
> C. 10% thereof to SANDER ALLEN of 990 Lake Shore Drive, Chicago, Illinois;
>
> D. 10% thereof to THE ARK located at 2341 West Devon Avenue, Chicago, Illinois;

E. All of our furniture, furnishings and household effects to SANDER ALLEN and MARTHA YANOFSKY in such shares as they may mutually determine between them;

F. Any remaining property not otherwise effectively disposed of shall be distributed to THE FIRST NATIONAL BANK, as Trustee (hereinafter called 'Trustee'), to be held as a charitable trust for and on behalf of THE HEBREW UNIVERSITY OF JERUSALEM, New York, New York, only upon the terms and conditions as hereinafter provided.

1. The Trustee shall hold said Trust Estate as a charitable trust in perpetuity. The Trustee shall pay the entire net income only, and no part of the principal, of the Trust Estate at least annually to said charitable organization, and that the primary purpose of the said trust is for the higher education of students living in Israel."

¶ 8 Israel died in 1984 and later that same year the Zivins' will was filed in the probate division of the circuit court of Cook County. Alma executed her own will in 2004 in which she expressly revoked any and all prior wills and codicils, made specific bequests of her personal effects and gave the rest, residue, and remainder of her estate to a "pour over trust" bearing her name. Alma's will made no provision for Hebrew University of Jerusalem. Thirty years after Israel's death, Alma died in Chicago on August 23, 2013, at the age of 95 years. The Zivins never had children and when Alma passed away, she was survived by a brother in Chicago and adult nieces and nephews in other parts of the United States.

¶ 9 Alma's 2004 will was admitted to probate on January 23, 2014, and by order of the court, her brother, Sander Allen, and her nephew, Norman Zivin, were appointed independent coexecutors of her estate. On March 3, 10, and 17, 2014, the coexecutors published notice of Alma's death. In the notice they stated there is a six month limitation period for contesting the validity of a will that has been admitted to probate and also that any claims against Alma's estate (such as creditor claims) that were not filed by September 4, 2014, were barred. See 755 ILCS 5/8-1, 18-3, 18-12 (West 2010).

¶ 10 The Probate Act of 1975 (Act) requires an estate's representative to publish and mail notice of the opening to the estate to all known creditors. 755 ILCS 5/18-3 (West 2010); *Polly v. Estate of Polly*, 385 Ill. App. 3d 300, 304, 896 N.E.2d 350, 354 (2008). If published and mailed notice *is* effectively given, any claims after the stated deadline (other than claims for administration expenses, surviving spouse awards, and surviving child's awards) are barred. 755 ILCS 5/18-12 (West 2010). If notice *is not* effectively given, the Act nonetheless sets an outer limit for bringing claims as two years after the decedent's death. 755 ILCS 5/18-12 (West 2012). The Act broadly defines a "claim" to include "any cause of action" (755 ILCS 5/1-2.05 (West 2010)), thus, the statutory limitations period applies to any claim regardless of its legal basis (*Rozycki v. Gitchoff*, 180 Ill. App. 3d 523, 536 N.E.2d 130 (1989) (any claim, whether based on contract, tort, or other theory, must be filed within the statutory time period and cannot be initiated in a separate proceeding after the estate is closed)). This inflexible time frame was enacted to facilitate the early settlement of estates. *In re Estate of Parker*, 2011 IL App (1st) 102871, ¶¶ 57-58, 957 N.E.2d 454. The time frame cannot be extended even for equitable reasons and, once it has expired, courts have no jurisdiction to adjudicate any claim against an estate. *Parker*, 2011 IL App (1st) 102871, ¶¶ 57-58, 957 N.E.2d 454; *In re Estate of Hoheiser*, 97 Ill. App. 3d 1077, 1081, 24 N.E.2d 25, 28 (1981)

(no exception may be made to the filing period); *In re Marriage of Epsteen*, 339 Ill. App. 3d 586, 596, 791 N.E.2d 175, 185 (2003); *Polly*, 385 Ill. App. 3d at 301, 896 N.E.2d at 352 (widow's claim for breach of prenuptial agreement entitling her to all of husband's earnings during their 21-year marriage was subject to the two-year limitations period and was time-barred when filed 29 months after husband's death).

¶ 11 On September 4, 2014, Hebrew University filed its claim, naming as respondents both Alma's estate and the pour over trust bearing her name (the main beneficiary of her individual will) and seeking 60% of the estate's value. The primary asset of Alma's estate was her former residence, 1212 N. Lake Shore Drive, Unit 9CS, Chicago, Illinois, 60610, which the court had approved selling for $662,000 in August 2014. The estate also included Alma's personal effects, such as automobiles, furnishings, art work, and jewelry. The record does not specify how Alma's trust was to treat those assets. (The trust bearing Alma's name that benefitted from Alma's 2004 will should not be confused with the trust put at issue by Hebrew University of Jerusalem which benefitted from the Zivins' 1983 will.)

¶ 12 As we indicated above, the school alleged it was a "beneficial legatee" of the Zivins' 1983 "joint and mutual will" and that a "legatee of a Joint and Mutual Will has a claim against the estate of the second spouse to die, when the surviving spouse executes a subsequent will that does not benefit the legatee in the same manner." The school calculated that it was entitled to 60% of the estate, based on the specific percentages stated in the will's fifth paragraph and the fact that the death of a specific legatee, Dr. Simon Zivin, entitled the school to his 10% share.

¶ 13 The coexecutors filed a motion for dismissal on the ground that because the school was not a trustee under the 1983 will, the school lacked standing to bring its own claim regarding the supposed trust. A section 2-619 motion to dismiss admits the legal sufficiency of the plaintiff's claim but asserts affirmative defenses or other matters that avoid or defeat the claim. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 344, 938 N.E.2d 640, 646 (2010); 735 ILCS 5/2-619 (West 2012). Lack of standing is considered an affirmative defense within the meaning of section 2-619(a)(9). *In re Estate of Schlenker*, 209 Ill. 2d 456, 461, 808 N.E.2d 995, 998 (2004); 735 ILCS 5/2-619(a)(9) (West 2012).

¶ 14 Standing is a doctrine that requires a plaintiff to have some real interest in his or her cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. 59 Am. Jur. 2d *Parties* §§ 26-29 (2015). The doctrine precludes persons who have no common law or statutory right or interest in a controversy from bringing a claim. *Potter v. Ables*, 242 Ill. App. 3d 157, 158, 610 N.E.2d 159, 160 (1993); *Schlenker*, 209 Ill. 2d at 464-65, 808 N.E.2d at 1000. A standing challenge focuses on the party seeking relief–not on the merits of the controversy–and asks whether that party is entitled to pursue the legal challenge, either in their personal or representative capacity. 59 Am. Jur. 2d *Parties* § 28 (2015); *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36, 965 N.E.2d 404. The doctrine is applied to ensure that the courts are available to decide actual, specific controversies between parties and are not mired in abstract questions, moot issues, or cases brought on behalf of parties who do not desire judicial aid. *Flast v. Cohen*, 392 U.S. 83, 99-100 (1968); *Powell*, 2012 IL 111714, ¶ 36, 965 N.E.2d 404. "To have standing, a [claimant] must present an actual controversy between adverse parties and, as to the controversy, the [claimant] must not be merely curious or concerned but must possess some personal claim, status, or right, a distinct and palpable injury which is fairly traceable to the [respondent's] conduct and

substantially likely to be redressed by the grant of such relief." *Potter*, 242 Ill. App. 3d at 158, 610 N.E.2d at 160.

¶ 15    By seeking dismissal pursuant to section 2-619, the coexecutors asked the judge to assume only for the purposes of argument that the school's claim stated a cause of action, including (1) that the 1983 will was a joint and mutual will and (2) that Alma's adoption of the 2004 will was in breach of her contractual obligation to Israel to maintain the Zivins' disposition to Hebrew University. The coexecutors argued that regardless of the school's allegation that it was a "beneficial legatee," the actual legatee according to the fifth article of the 1983 will was First National Bank, as trustee, or, according to the sixth article "any successor to the trust business." The coexectors further argued that section 107 of the Restatement (Third) of Trusts indicates that generally a trustee is the party with standing to sue third parties on behalf of a trust. Restatement (Third) of Trusts § 107 (2012).[1] Also, while there are exceptions to this rule, the school had not alleged any facts which entitled it to bypass the trustee and bring suit on its own. Restatement (Third) of Trusts § 107 (2012).

¶ 16    Section 107 of the Restatement (Third) of Trusts provides:

> "(1) A trustee may maintain a proceeding against a third party on behalf of the trust and its beneficiaries.
>
> (2) A beneficiary may maintain a proceeding related to the trust or its property against a third party only if:
>
>> (a) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved; or
>>
>> (b) the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest.
>
> (3) In appropriate circumstances, a trustee ad litem may be appointed to consider and, if appropriate, to maintain a proceeding against a third party on behalf of the trust and its beneficiaries." Restatement (Third) of Trusts § 107 (2012).

The official comments to the text provide further explanation. The comment on subsection (1) indicates:

> "*b. General rule.* As holder of the title to trust property (including choses in action), and as the representative of the trust and its beneficiaries, the trustee is normally the appropriate person to bring (and to decide whether to bring) an action against a third party on behalf of the trust. Except as provided in Subsection (2), a beneficiary has no standing to sue a third party on behalf of the trust." (Emphasis in original.) Restatement (Third) of Trusts § 107 cmt. b (2012).

The comment on subsection (2) states:

---

[1] Treatises and restatements of the law are only persuasive authority and not controlling in these proceedings, but it is a common and sound practice to consult these sources, particularly in cases such as this in which there is no Illinois authority directly on point. See, *e.g.*, *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 164, 862 N.E.2d 985, 992 (2007) (relying on Restatement (Second) of Agency § 228 (1958) to define a key statutory term); *In re Estate of Lieberman*, 391 Ill. App. 3d 882, 890, 909 N.E.2d 915, 922 (2009) (analyzing the facts under both the Restatement (Second) of Trusts § 174 (1959) and Illinois law, and stating unless a Restatement section has been adopted by the Illinois Supreme Court, it is not the law, and merely provides guidance).

"*c. Beneficiary standing.* Because the trustee is ordinarily the appropriate person to bring (and to decide whether to bring) an action against a third party on behalf of the trust, a beneficiary may maintain a proceeding relating to the trust or its property against a third party only in the following limited circumstances: (1) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved (Comment *c(1)*); or (2) the trustee is unable or unavailable, or improperly refuses or fails, or is not well suited to protect the beneficiaries' interests (Comment *c(2)*).

\*\*\*

*c(2). Derivative action: trustee unavailable, etc.* It bears repeating that the trustee, and not a beneficiary, is ordinarily the only proper person to bring (and to decide whether to bring) an action on behalf of the trust against a third party. The trustee may well decide, and rightly, not (or not yet) to bring an action. There are circumstances, however, when it is necessary for a beneficiary to act. If, for example, the beneficiary can show that the trustee is improperly refusing or neglecting to bring an action, or if the trustee is unavailable or unable to act, the protection of the trust estate may depend on the initiative of a beneficiary (including by seeking appointment of a trustee ad litem, see Comment *d*). \*\*\*

\* \* \*

The appointment of a trustee ad litem is particularly useful in circumstances in which it may be unnecessary or premature, or the need for action too urgent, to remove and replace the trustee, even temporarily with respect to other aspects of administration, and in which the court finds it to be in the best interests of the beneficiaries and appropriate to the trust purposes to assure independent and disinterested decisions regarding the prosecution of the proceeding in question." (Emphases in original.) Restatement (Third) of Trusts § 107 cmt. c (2012).

¶ 17    An Illinois plaintiff need not allege specific facts establishing standing, rather it is the defendant's burden to plead and prove a lack of standing. *Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998. Once a defendant has met its burden on a section 2-619 motion to dismiss of showing that an affirmative matter defeats the claim, the burden shifts to the plaintiff to show that the affirmative defense was unfounded or that a fact dispute precludes the dismissal. *Pruitt v. Pruitt*, 2013 IL App (1st) 130032, ¶ 14, 995 N.E.2d 313. The plaintiff may use affidavits or other proof to overcome the affirmative defense or to show that at least a fact dispute precludes the dismissal. *Pruitt*, 2013 IL App (1st) 130032, ¶ 14, 995 N.E.2d 313.

¶ 18    In response to the motion to dismiss, the school contended that it did have standing to sue in its own name "due to the trustee's failure to take any action on its behalf" to protect its beneficial interest. It supported this argument with the sworn affidavit of attorney David Stringer who stated that he contacted the successor trustee, Chase Bank, regarding the school's potential claim and the impending deadline, and was verbally advised that the bank would not be pursuing a claim. The school also argued that if the court determined the school lacked standing, then the affidavit was grounds for the court to appoint a trustee *ad litem*.

¶ 19    The coexecutors replied that Stringer's affidavit included hearsay statements that could not be taken into consideration and that even if the statements were admissible, the indications that Chase Bank had "failed," "refused" or "declined" to act did not meet the standard of section 107(2)(b) of the Restatement (Third) of Trusts. Restatement (Third) of Trusts § 107(2)(b) (2012).

¶ 20 After considering the parties' briefs and oral arguments, the trial court granted the dismissal with prejudice due to lack of standing and denied the school's oral motion for leave to amend. This appeal followed.

¶ 21 We consider *de novo* whether the section 2-619 dismissal of the school's claim against the coexecutors for lack of standing was proper as a matter of law. *Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998. Like the trial judge, we construe the section 2-619 motion and supporting documents in the light most favorable to the nonmoving party. *Piser*, 405 Ill. App. 3d at 345, 938 N.E.2d at 647.

¶ 22 For the purposes of section 2-619, we must take as true the school's allegations which indicate the Zivins' 1983 will was a joint and mutual will, the Zivins' bequest to Hebrew University became essentially irrevocable when Israel died and the will was filed in Cook County circuit court in 1984, Alma breached her contract with Israel by executing a will in 2004 that did not benefit Hebrew University, and the school's breach of contract claim against Alma's estate ripened upon her death and the admission of her 2004 will to probate. Stated another way, we assume for the purposes of argument that the disposition of Alma's estate as provided for in her individual will improperly deprives the school of the bequest it is entitled to from the Zivins' joint and mutual will.

¶ 23 Because the wording of a will communicates the intention of the testator or testators, we start our standing analysis with the express terms of the Zivins' 1983 will. *Signore*, 149 Ill. App. 3d at 907, 501 N.E.2d at 283 (courts review the language of a will to determine what was intended by the testator or testators). The 1983 will states that "FIRST NATIONAL BANK" or its successor, which is Chase Bank, is to receive and manage the Zivins' bequest of assets "for and on behalf of" Hebrew University of Jerusalem. Thus, according to the 1983 will, the trustee, not the beneficiary, would have the right to bring an action regarding the Zivins' bequest, and the trustee, not the beneficiary, would have standing. This reading of the will is consistent with Illinois statute, which provides that a trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." 760 ILCS 5/4.11 (West 2012); *Pierce v. Chester Johnson Electric Co.*, 117 Ill. App. 3d 867, 868, 454 N.E.2d 55, 56 (1983) (interpreting Illinois law and stating that trustees possess a specific statutory power to sue on behalf of a trust). This reading of the will's trust language is also consistent with the language of the Restatement (Third) of Trusts (Restatement (Third) of Trusts § 107 (2012)), as quoted above, and also Bogert's legal treatise about trusts, which states:

"Normally Trustee Sues

The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct. Although the beneficiary is adversely affected by such acts of a third person, no cause of action inures to him on that account. The right to sue in the ordinary case vests in the trustee as a representative.

> Thus if a third person wrongfully withholds possession of the trust property from the trustee, the trustee is usually the only proper party plaintiff to sue \*\*\*. \*\*\*
>
> In the absence of special circumstances, the beneficiary is not eligible to bring or enforce these causes of action which run to his trustee. Thus in the usual case he cannot sue a third person to recover possession of the trust property for himself or the trustee, or for damages \*\*\*." George Gleason Bogert, The Law of Trusts and Trustees § 869, at 112-16 (rev. 2d ed. 1995).

¶ 24 However, the school's pleading, affidavit, and arguments indicated this proceeding *might be* the exception to the general rule that the trustee is the appropriate party to pursue the interests of a trust. The record leaves open material questions as to whether this is an exceptional case in which Chase Bank's inability or refusal to pursue a claim, despite an inflexible deadline[2] to file one against Alma's estate, justifies allowing the trust beneficiary to proceed in this action without a trustee or warrant the appointment of a trustee or trustee *ad litem* to maintain this proceeding.

¶ 25 With the Restatement (Third) and Bogert's treatise in mind, the school contends attorney Stringer's affidavit clearly showed that Chase Bank was refusing to act or neglecting to file before the claims period expired, thus, indicated that the school had standing to proceed with a claim in its own name. The coexecutors respond that refusal or negligence are new arguments on appeal and that in the trial court the school argued only that Chase Bank "failed" to take action. The coexecutors give this response because it is well settled that issues, questions, points or contentions not presented in the trial court and properly preserved for review should not be considered on appeal. *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8, 1 N.E.3d 1231. We find, however, that the school's argument is essentially what it argued in the trial court, albeit with slightly different wording and reliance on different authority.

¶ 26 In our opinion, Stringer's affidavit competently conveys that he contacted Chase Bank about the school's potential claim as well as the six month filing deadline. We find that to the extent Stringer's affidavit includes hearsay (he relates Chase Bank's response), that statement is not important here. Hearsay is generally inadmissible and consists of either written evidence or testimony, of a statement made out of court, offered to show the truth of matters asserted therein, and thus rests for its value upon the credibility of the out-of-court asserter. *Mashni Corp. v. Laski*, 351 Ill. App. 3d 727, 735, 814 N.E.2d 879, 886 (2004); *Smith v. United Farm Mutual Reinsurance*, 249 Ill. App. 3d 686, 689, 619 N.E.2d 263, 265 (1993) (rejecting affiant's statement of hearsay which began with, " 'Ron Clark and the other insurance people told me that right after the fire' "). Even if we disregard what Chase Bank purportedly said to Stringer, the affidavit competently shows that Stringer informed Chase Bank of the school's potential claim against Alma's estate and that the claim could be time-barred, and we can deduce from (1) Chase Bank's failure to file within the claims period and (2) its absence in these proceedings, that despite Stringer's urging to intercede, Chase Bank was either incapable or unwilling to pursue an action on the school's behalf

---

[2]We express no opinion as to whether the claim was governed by the six month deadline or the two year deadline. The school filed on the six month date and the two year date lapsed while this appeal was pending.

against Alma's estate. However, none of the parties' submissions resolve why Chase Bank did not file the action. The existing record does not resolve the material question of whether Chase Bank is "unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest [in the Zivins' 1983 bequest]," which is the standard set out in section 107(2)(b) of the Restatement (Third) of Trusts for allowing a beneficiary to proceed on its own. Restatement (Third) of Trusts § 107(2)(b) (2012). Moreover, this case may present "appropriate circumstances" within the meaning of section 107(3) of the Restatement (Third) of Trusts for appointing a trustee *ad litem* "to consider and, if appropriate, to maintain a proceeding against [Alma's estate] on behalf of the [1983] trust and its beneficiar[y]." Restatement (Third) of Trusts § 107(3) (2012). Or, these may be "special circumstances," as described in Bogert's treatise in which "the beneficiary is *** eligible to bring or enforce *** causes of action which [ordinarily] run to his trustee." Bogert, *supra* § 869, at 112-16. We find that these are material issues regarding standing that are not resolved by the current record and which preclude dismissal. In deciding the merits of a section 2-619 motion, a trial court cannot determine disputed factual issues solely upon affidavits and counter-affidavits. If affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing. *Premier Electrical Construction Co. v. La Salle National Bank*, 132 Ill. App. 3d 485, 477 N.E.2d 1249 (1984); *Dickman v. Country Mutual Insurance Co.*, 120 Ill. App. 3d 470, 458 N.E.2d 199 (1983). We find that an evidentiary hearing on the section 2-619 motion is warranted. Accordingly, we vacate the dismissal order and remand for proceedings on the coexecutors' section 2-619 motion, in order to determine whether Chase Bank or a trustee *ad litem* should be appointed to maintain Hebrew University's claim against Alma's estate, whether the school may continue to represent itself, or whether, in fact, the section 2-619 motion should be granted. We reiterate that we have no opinion as to whether the 1983 will is in fact both a joint will and a mutual will and we emphasize that if, on remand, the trial court determines that the 1983 will does not meet this standard, then the court should grant the dismissal for lack of standing.

¶ 27 We need not reach the school's additional arguments, which are that it had standing (1) as the true party in interest, (2) due to the "exigent circumstances" of the impending lapse of the filing deadline for bringing a claim against the estate, and (3) because there was actually no trust, trustee, or beneficiary because Alma revoked the will which created them.

¶ 28 Vacated and remanded.