In the Matter of the Estate of Anna G. King, Deceased.
Ruth King Ruffing, Ray N. King, and Ona King Marr,
for and on Behalf of Themselves and Other Heirs,
Legatees, and Devisees of Anna G. King, Deceased,
Similarly Situated, Petitioners-Appellants, v. Dale
Glissendorf, et al., and Continental Illinois National
Bank and Trust Company of Chicago, Respondents-
Appellees.

Gen. No. 52,075.

First District, First Division.

January 29, 1968.

BURMAN, P. J., dissenting.

Blanksten and Lansing, of Chicago (Bernard M. Kaplan, of counsel), for appellants.

Jurco, Damisch & Sinson, John B. Lampe, of Chicago (James R. Mitchell and John W. Damisch, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a proceeding under section 72 of the Civil Practice Act to set aside the admission of a will to probate and to contest its validity. The petition was filed in the estate of the decedent more than nine months after the admission of the will to probate. The petitioners appeal from an order which struck and dismissed their petition.

On March 5, 1962, Anna G. King, in a conservatorship proceeding in the Probate Court of Cook County, was adjudicated "an incompetent" and "incapable of managing her person and estate." Donald E. Nichols was appointed conservator of her estate and person. She died on December 5, 1965, in a nursing home. She had been married only once, and then to Roy D. King, who had predeceased her. No children were born to her, and her heirs at law were three nieces and a nephew. She was then eighty-nine years of age. As she had never been restored, the

conservatorship proceedings were still in effect at her death.

On December 10, *1965*, in the Probate Division of the Circuit Court of Cook County, an order was entered admitting to probate a purported will of Anna G. King, dated June 28, 1965. Letters testamentary were issued to the Continental Illinois National Bank and Trust Company, and it entered upon its duties as executor. The will devised and bequeathed her entire estate to her nieces and nephew, all respondents here.

Thereafter, on December 21, *1966*, petitioners filed their "petition for relief pursuant to the provisions of Section 72 of the Civil Practice Act of Illinois, and Sections 5, 69, 90, 112 and 126 of the Probate Act of Illinois," in the estate proceedings which were still pending. Petitioners sought to vacate and set aside the order entered on December 10, 1965, admitting to probate the purported will of Anna G. King, deceased, dated June 28, 1965, and to have that will "decreed to be a nullity and of no legal effect"; and to have a prior will dated July 25, 1961, admitted to probate as the last will and testament of Anna G. King, deceased.

The petitioners are relatives of Anna G. King's deceased husband and are legatees under the will dated July 25, 1961. This will was never submitted for admission to probate and was filed with the Clerk of the Circuit Court of Cook County, Probate Division, on December 27, 1965. Petitioners allege that they had no notice of the death of the decedent or of the admission to probate of the will dated June 28, 1965, or of the existence of the prior will dated July 25, 1961, until after the expiration of more than nine months after the admission to probate of the will dated June 28, 1965.

In sum, the grounds alleged for relief are based on (1) fraud in the admission of the will to probate, and (2) fraud and undue influence in the execution of the will.

344

As to the first of these contentions, petitioners allege that respondents and their counsel fraudulently and improperly concealed and failed to disclose decedent's incompetency to the court at the time they sought the admission of the will to probate. Petitioners assert, under section 69 of the Probate Act, that if the trial court had been properly informed of decedent's incompetency at the time her will was submitted for admission to probate, it would have barred the admission to probate of the will of June 28, 1965.

As to the second of their contentions, petitioners allege that respondent's counsel were subscribing witnesses to the will of June 28, 1965, and respondents and their counsel procured the execution of the will by fraud and undue influence. Petitioners assert that the fraud and concealment of decedent's incompetency at the will hearing operated to suspend or toll the 9-month limitation period for the contesting of her will under section 90 of the Probate Act, and their petition was timely filed to contest the will.

The record includes the testimony taken at the hearing on the admission of the will to probate on December 10, 1965. The original transcript sets forth the testimony of John W. Damisch and Stephen Jurco, two of the four subscribing witnesses. Both witnesses were attorneys and members of the law firm representing the executor. Both witnesses testified as to the execution of the will on June 28, 1965, and their belief that Anna G. King "was of sound mind" when she signed the will. They stated she talked "intelligently and rationally" and "rationally and coherently," and that they believed "she knew what she was doing."

John W. Damisch also testified that when the decedent signed the will, the persons present included Harold W. Collins, Junie L. Sinson and Stephen Jurco. Stephen Jurco stated that Anna G. King "had a very keen sense of

humor," and on being questioned by Harold Collins, appearing on behalf of the executor, Jurco replied affirmatively to the questions: "Did you discuss with the decedent the nature and extent of her property?" "Was she aware of the nature and extent of her property?" "Did she know the specific purpose of her business there?" "She knew she was making a will?"

At the hearing of the section 72 petition, Collins stated to the court that the transcript of the testimony of the will hearing was not complete, and after some colloquy between court and counsel, he stated, "Reading from this court record, Mr. Collins—that being myself—directing his remark to the attention of the Court, states that, 'The decedent was a ward of this court, a conservator having been appointed in 1962 . . . .'" Except for the foregoing, no reference was made of the conservatorship in the petition or in the proceedings for the admission of the will to probate.

The record further shows that at the hearing of the section 72 petition, the trial court reviewed the record at length and pertinent authorities and remarked, "It has been shown that counsel here introduced evidence to show that this person had been declared incompetent. That's been admitted. There were two people who were subscribing witnesses to a will who testified that in their opinion—as read here by counsel previously and which the Court will take judicial notice of for its own record—this person was of sound mind, memory, and so forth." In sustaining the motion to strike the petition for relief, the court found "that the statutory requirements for the admission of the will to probate under Section 69 of the Probate Act have been complied with."

Petitioners contend the basic issues presented for review are:

"(1) Whether the nine (9) months' period of limitations under Section 90 of the Probate Act of Illinois

346

for filing a petition to contest the admission of a Will to probate, operates, not as a jurisdictional limitation upon the part of the Circuit Court to entertain such a petition, but only as a Statute of Limitations subject to such exceptions as would, as here by reason of fraud, bar the tolling or running of a Statute of Limitations?

"(2) Whether under the facts and circumstances here presented there was such 'fraud . . . compulsion or other improper conduct' in connection with the execution by the decedent of her Will dated June 28, 1965, as well as lack of notice to the petitioners-appellants, and/or such unrebutted continued presumption of insanity upon the part of the testatrix in connection with her execution of her said Will dated June 28, 1965, as would bar the admission to probate of said Will of Anna G. King, deceased, dated June 28, 1965, under Section 69 of the Probate Act of Illinois?

"(3) Whether, under the facts and circumstances here presented, the Petitioners-Appellants as contestants to the admission to probate of said Will of Anna G. King, deceased, dated June 28, 1965, can properly submit evidence in support of their Petition for Relief under Section 72 of the Civil Practice Act of Illinois to vacate, set aside and hold for nought the Order of the trial court of December 10, 1965 admitting said Will to probate, where the subscribing witnesses and proponents of said Will are themselves parties to the 'fraud, . . . compulsion or other improper conduct' in connection with the execution of said Will, and the admission of said Will to probate?"

The respondents contend that the execution of the will and its probate complied with all the statutory requirements. They assert there was no duty on the part of

respondents to inform the court as to the alleged "senile dementia," because if such a condition existed, it would only be evidence from which lack of testamentary capacity could be inferred—since the only evidence admissible at the hearing was that of the attesting witnesses, it was not incumbent upon the respondents or their counsel to go into the matter. They also assert that evidence as to the conservatorship of the testatrix was not admissible on the hearing to admit the will to probate, and there can be no duty to inform the court concerning matters as to which no evidence could be received.

■ At the outset, we note that section 72 of the Civil Practice Act states that relief "shall be available in every case by proceedings hereunder, regardless of the nature of the order, judgment or decree from which relief is sought or of the proceedings in which it was entered . . . statutory or otherwise," and "in the same proceeding in which the order, judgment or decree was entered but is not a continuation thereof." From this, it is our opinion that section 72 may be appropriately used in probate proceedings and for the relief sought here.

■ We are of the opinion, also, that petitioners, as devisees and legatees of a prior will of the decedent, were "interested persons" within the meaning of section 90 of the Probate Act for the purpose of contesting the validity of the will of June 28, 1965.

■ The disposition of property by will is not an inherent or natural right but is purely statutory and is presently regulated by the Probate Act of 1939, as amended (36 ILP, Wills, § 2). The Probate Act sets forth (1) the required capacity of a testator (§ 42); (2) the requirements and manner of executing a will (§ 43); (3) the procedure for the admission of a will to probate and the testimony of witnesses (§§ 63–69); and (4) the procedure for the contest of a will within nine months after the admission to probate by "any interested person," by

filing "a petition in the proceeding for the administration of the testator's estate to contest the validity of the will" (§ 90).

■ ■ We do not agree with petitioners that the 9-month period provided under section 90 for the filing of a petition to contest the validity of a will is a general statute of limitations. It has been well settled in this state that the power of a court to entertain a petition to set aside a will is purely statutory and "can be exercised only in the manner and within the limitations prescribed by statute." (McQueen v. Connor, 385 Ill 455, 457, 53 NE2d 435 (1944).) "The time within which such a proceeding may be brought is considered to be a condition essential to the jurisdiction of the court," and the court has no jurisdiction or power to entertain such a proceeding after the statutory period has passed. (Heuberger v. Schwartz, 41 Ill App2d 28, 31, 190 NE2d 163 (1963).) "Statutes providing for contests within a prescribed period have been held not to be statutes of limitation, but grants of jurisdiction." (95 CJS, Wills, § 359, p 214.) See, also, Pedersen v. Dempsey, 341 Ill App 141, 142, 93 NE2d 85 (1950); Masin v. Bassford, 381 Ill 569, 572, 46 NE2d 366 (1943).

We conclude that as the instant petition was not filed within nine months after the admission to probate of decedent's will, the Probate Division, under the provisions of section 90, had no jurisdiction to consider the petition to contest the validity of the will.

Considered next is petitioners' contention that the Probate Court had jurisdiction to consider their petition under section 69, because the alleged facts showed "fraud, forgery, compulsion or other improper conduct" by respondents and their counsel, sufficient to invalidate or destroy the will.

Although respondents assert that at the will hearing the court was informed as to the pendency of the con-

servatorship of the testator, we shall consider that issue as if the court had not been informed and in the light of the Probate Act and pertinent authorities of this state.

In In re Estate of Weedman, 254 Ill 504, 98 NE 956 (1912), the question arose as to whether evidence of the mental capacity of the testatrix was competent at the will hearing, and the court said (p 506):

> "The will was executed in legal form and the testimony of the subscribing witnesses fulfilled the requirements of the statute for its admission to probate. No other evidence as to the mental capacity of the testatrix was competent. . . .

> "The object of a hearing when a supposed will is presented for probate is to determine whether it has been executed with the formalities required by law, and the statute prescribes the amount and kind of proof which is sufficient to admit the will to record, —that is, the testimony of two subscribing witnesses to the execution of the will and to their belief that the testator or testatrix was of sound mind. No other evidence is required and no contradictory evidence is admissible, though the statute reserves the right to show fraud, compulsion or other improper conduct sufficient to invalidate the will. Therefore no part of the proceedings for the appointment of a conservator or of the testimony of Mrs. Weedman was admissible for the purpose of showing that she was not of sound mind."

At page 507:

> "Though unsoundness of mind once shown to exist may be presumed to continue, the presumption is not conclusive."

Many of the pronouncements made by our Supreme Court in Shepherd v. Yokum, 323 Ill 328, 154 NE 156 (1926), apply here:

350

"The probate of wills is governed entirely by the statute, and when the statutory requirements are complied with, no others can be prescribed." (P 332.)

"In the absence of proof of fraud, forgery, compulsion or other improper conduct both the probate court and the circuit court are required to admit a will to probate upon proof that the requirements of the statute have been complied with." (P 333.)

"The court is not required to find from the testimony of the witnesses that the testator was, in fact, of sound mind and memory when he executed the will. . . . If the subscribing witnesses testify that they believed the testator was of sound mind and memory when he executed the will the probate court must accept their view, even though it may be of the opinion that their belief was not well founded or was erroneous. The probate court has no power to weigh the evidence further than to determine if a prima facie case has been made out. It was not intended by the legislature that all things which will invalidate a will should be cognizable by the court to which an application for probate is addressed.

". . . It is not the duty of a proponent to show that the will is valid in all respects. It is only his duty to make proof of the essentials mentioned in the statute. When he has done this a prima facie case entitling the will to probate has been made out. Neither the probate court, nor the circuit court on appeal, has power to refuse a will to probate upon any ground whatsoever other than a failure of the proponent to make proper proof of the requirements mentioned in section 2, or because proof of fraud, forgery, compulsion or other improper conduct ap-

351

pears which is deemed sufficient to invalidate or destroy the will. . . . In Stuke v. Glaser, 223 Ill 316, the term 'fraud,' used in the proviso, was held to relate to such conduct as a trick or device by which a person may be induced to sign the paper under the impression it is something else, or to the alteration of the will after it is signed, or the substitution of another paper for part of the will after it has been signed, and matters of like character. This definition of 'fraud' was later approved in Buerger v. Buerger, supra. The terms 'compulsion' and 'other improper conduct' were also defined in the last mentioned case. Compulsion was said to refer to actual constraint or pressure, physical or otherwise, amounting to duress, or threats to compel the execution of the instrument. 'Other improper conduct,' following the specific words 'fraud' and 'compulsion,' was said to refer to other acts of a kind similar to those specifically mentioned. It is therefore apparent that undue influence is not included within the purview of section 2 of the Wills act by specific mention or by necessary implication." (Pp 334–335.)

"When a prima facie case has been made out warranting the admission of a will to probate, and no proof has been made of fraud, forgery, compulsion or other improper conduct sufficient to invalidate or destroy it, an objector has done all the law permits him to do in that proceeding. . . . If he has any countervailing testimony upon the testator's sanity, or as to his capacity to make a will, or whether he made it under unlawful constraint, he must resort to his bill in chancery." (P 336.)

See, also, In re Estate of Guinane, 65 Ill App2d 193, 213 NE2d 30 (1965).

██ In our opinion, the foregoing authorities provide the guidelines to be used in the instant appeal. The new

Judicial Article (Article VI, effective January 1, 1964), which in effect eliminated the Probate Court and probate appeals to and trials de novo in the Circuit Court, does not call for the use of new guidelines. We conclude that neither the provisions of the Probate Act nor the pronouncements of our Supreme Court required the proponents of the instant will, at the proceedings for the admission of the will to probate, to inform the court of the still pending conservatorship of the testator.

Therefore, we hold that the alleged failure by the proponents of the will to inform the court (denied by them), of the pending conservatorship of the testator, was not a basis, under section 69, on which to charge the proponents with fraud on the court or improper conduct in the admission of the will to probate or as a ground to vacate and set aside the order of December 10, 1965, admitting the will of June 28, 1965, to probate.

As the instant will was properly admitted to probate under section 69, it follows that the section 72 petition filed December 21, 1966, was not filed within the statutory period provided by section 90 for a will contest, and the Circuit Court was without jurisdiction to entertain it.

For the reasons given, it was proper for the trial court to strike and dismiss the instant petition to set aside the admission of the will and to contest its validity, and the order is affirmed.

Affirmed.

ADESKO, J., concurs.

BURMAN, P. J., dissenting:
I am unable to agree with the judgment of the majority of the court. I am of the opinion that the petitioner's request for relief under section 72 should be allowed and

the cause should be reversed and remanded for trial on the merits of the petition.

Section 72 has been increasingly used as a procedural device to prevent injustice. Ellman v. De Ruiter, 412 Ill 285, 106 NE2d 350 (1953). A liberal construction of section 72 has been established whereby a petition filed under section 72 invokes the equitable powers of the court to grant relief where it is necessary to prevent injustice. Elfman v. Evanston Bus Co., 27 Ill2d 609, 190 NE2d 348 (1963).

Section 69 of the Probate Act (Ill Rev Stats 1965, c 3, § 69) as amended, provides in part, that the execution of a will is sufficiently proved to admit it to probate when two attesting witnesses testify that they believe the testator to be of sound mind and memory at the time of the signing and acknowledging of the will ". . . unless there is proof of fraud, forgery, compulsion, *or other improper conduct* which in the opinion of the court is deemed sufficient to invalidate or destroy the will." (Emphasis supplied.)

The record shows that Anna G. King, the testatrix in the instant case, was declared an incompetent on March 5, 1962, and was never restored. The order declaring Mrs. King an incompetent was the result of a petition filed by the respondents-appellees. The petition alleged that Anna King was eighty-six years of age and was wholly incapable of managing her estate. The petition requested the appointment of a conservator because Anna King, due to her advanced age, physical incapacity, and mental deterioration, ". . . is wholly incapable of managing her person or estate." The petition was supported by the verified affidavits of two physicians who personally examined Anna King. They found that her mental status reflected severe impairment of memory, periods of confusion, and seriously impaired judgment, and that these symptoms were the result of senility and could be expected to increase in intensity.

Pursuant to this petition, a conservator was appointed and by leave of court, Anna King, became a patient at Carmen Manor Nursing Home from March 7, 1962, to June 28, 1965, when she was removed by respondents-appellees through the aid of the firm of Jurco, Damisch and Sinson, and on the latter date, the testatrix executed the involved Will. The testatrix died on December 5, 1965, at the age of eighty-nine. On December 10, 1965, Stephen Jurco and John Damisch, attorneys for the executor, testified as subscribing witnesses to the Will and it was admitted to probate on that day.

In their petition under section 72 the petitioners alleged that they had no notice or knowledge of the pending probate proceedings or of the purported Will of the testatrix until December 2nd or 3rd of 1966. On December 21, 1966, they filed the instant petition. Affidavits were filed by petitioners of statements made by Dr. Louis A. Terman, physician and surgeon and house physician of the Carmen Manor Nursing Home; of Dr. C. Conover Talbot, personal physician of Anna King from 1958 to June 16, 1965; and of Mrs. Clara Cohen, administrator of the Carmen Manor Nursing Home.

Dr. Terman stated that Anna G. King was one of his patients during the entire time she was in the Carmen Manor Nursing Home, and if need be, he examined her on the average of five or more times per week. He said that when she came to the Nursing Home she was clearly senile and suffered from severe impairment of memory and periods of confusion. He further stated that her senility was progressive in nature, and on the date of her removal from the home, she was totally senile. During her stay in Carmen Manor the testatrix was suffering from (1) a total inability to use logic or draw conclusions; (2) total inability to recall; (3) total disorientation as to time, place, and people; (4) episodes of severe senile agitation and emotional outbursts; and (5) living in her childhood a good deal of the time. In Dr. Terman's opin-

355

ion she could not comprehend the significance of making a will.

Dr. Talbot, the personal physician of the testatrix, from 1958 to the time when he last saw her in Carmen Manor in June of 1965, stated that in 1962 Mrs. King became easily confused and was getting senile. It was upon his recommendation, concurred in by two other doctors, that a conservator was appointed. He said he saw her every other week at the Nursing Home and more frequently when she was hospitalized. He stated that eventually she became completely senile. In 1965 she could no longer identify him and would ask "who are you young man." She associated him with a man who brought her candy. At times, Dr. Talbot stated, the testatrix thought her parents, husband, and brothers and sisters were still alive and living with her although they were long since dead. Dr. Talbot was of the opinion that on June 16, 1965, Mrs. King was totally senile, and was incapable of comprehending or taking care of her affairs, money, and property.

Mrs. Clara Cohen stated that she had occasion to see Mrs. King almost every day while the testatrix was staying in Carmen Manor. She stated that Mrs. King suffered from loss of memory and was unable to recall persons or events. She had absolutely no concept of what money, property or estate she might have. Mrs. Cohen stated further that when Anna King was removed from the Nursing Home by the respondents-appellees on June 28, 1965, she had no understanding or comprehension whatsoever of where she was going, or why, or of who was taking her. In the opinion of Mrs. Cohen, Mrs. King, at the time of her departure from Carmen Manor, was totally senile and was incapable of understanding the significance of making a will. Furthermore, the testatrix did not know who her living relatives were.

The section 72 petition alleges that actual and constructive fraud was practiced on the decedent testatrix,

and upon the heirs, devisees and legatees who would take under the prior subsisting Will of July 25, 1961, in that the respondents-appellees took advantage of the testatrix's mental infirmaties to cause her to execute the Will dated June 28, 1965. The petition further alleges that the respondents-appellees fraudulently concealed from the Probate Court the fact that the testatrix was suffering from complete senile dementia at the time of the execution of the instrument dated on June 28th, a fact that they knew about because of their participation in the then still pending conservatorship proceedings. The court dismissed the petition without giving the petitioners a hearing on the merits; the petition was dismissed summarily on the motion of the respondents-appellees.

I do not believe that the petition should have been dismissed in such a peremptory manner. Under the particular circumstances of the instant case I am of the opinion that justice would be better served by vacating the dismissal of the petition and remanding the cause to proceed to trial under the issues raised. Fraud is clearly an appropriate basis for considering relief under sections 69 and 90 of the Probate Act as well as under section 72. Under the Amended Judicial Article the Circuit Court now has "unlimited original jurisdiction of all justiciable matters." This in effect abolishes the Probate Court as a separate court. This change would seem to militate against the former strict construction of section 69 concerning the scope of issues that could be raised in probate proceedings admitting a will to probate. I also deem it significant that the assets of the estate have not as yet been distributed.

I am of the opinion that the nine (9) months' period of limitation under section 90 of the Probate Court for filing a petition to contest the admission of a will to probate, operates not as a jurisdictional limitation, but only as a Statute of Limitations subject to such exceptions as

357

would, as here, by reason of fraud, bar the tolling or running of a Statute of Limitations. As pointed out by the petitioners the practical need for such a rule is further highlighted in the instant case by the fact that they were nonresidents of Illinois residing in Minnesota and Colorado, and had no notice or knowledge of the death of decedent, or of the admission to probate of the Will dated June 28, 1965, or of the execution of the prior Will dated July 25, 1961, until after the expiration of more than nine (9) months after the admission to probate of the 1965 Will.

In my judgment, an order of Court admitting a Will to probate, is subject to post judgment review under section 72 of the Civil Practice Act and the petitioners should be given leave to contest the validity of the 1965 Will under the facts and circumstances revolving about the admission of the Will.