# Illinois Official Reports

## Appellate Court

*In re Estate of Schumann*, 2016 IL App (4th) 150844

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF JOHN O. SCHUMANN, Deceased (Hanna Struever and Nathan Struever, Petitioners-Appellants, v. Mary Ann Herren, a/k/a Mary Ann Yoswig, as Executrix of the Estate of John O. Schumann, Respondent-Appellee). |
| District & No. | Fourth District<br>Docket No. 4-15-0844 |
| Filed | November 3, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Calhoun County, No. 14-P-8; the Hon. Frank McCartney, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Edward J. Fanning (argued), of Hardin, for appellants.<br><br>Michael J. McDonald and Anita G. Cooper (argued), of Cooper McDonald & McDonald, of Jerseyville, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Appleton and Pope concurred in the judgment and opinion. |

**OPINION**

¶ 1      John O. Schumann (Pete) died in July 2013. In March 2014, Mary Ann Herren (otherwise known as Mary Ann Yoswig)—Pete's caretaker and holder of his power of attorney during the later years of his life—petitioned to probate a will Pete executed in October 2007, which appointed Herren as executrix and devised Pete's entire estate to be administered pursuant to a trust agreement. Hanna and Nathan Struever—the children of Pete's late wife, Alice—petitioned to contest the 2007 will. The Struevers claimed that Pete lacked the capacity to execute the 2007 will and that Herren exerted undue influence over Pete in creating it. The Struevers further asserted that Pete executed a valid will and trust in 2002, which would benefit the Struevers.

¶ 2      Herren moved to dismiss the Struevers' will contest, arguing that under the supreme court's decision in *In re Estate of Schlenker*, 209 Ill. 2d 456, 808 N.E.2d 995 (2004), the Struevers lacked standing. The trial court agreed and dismissed the Struevers' petition. The Struevers appeal, and we reverse.

¶ 3                         I. BACKGROUND

¶ 4      Pete died in 2013. In March 2014, Herren filed a petition to probate Pete's October 18, 2007, will, which was attached to Herren's petition and which named her as executrix. The will explicitly revoked "all prior wills" and bequeathed Pete's entire estate to "the Trustee under the Trust Agreement dated October 18, 2007." (The referenced trust agreement was not attached to Herren's petition to probate and does not appear anywhere in the record on appeal.)

¶ 5      In December 2014, the Struevers filed an amended petition to contest the 2007 will. The amended petition alleged that (1) Pete lacked the testamentary capacity to execute the 2007 will and (2) Herren exerted undue influence over Pete when executing the will. The Struevers alleged further that in October 2002, Pete and Alice executed "mutual" wills and trusts. Attached to the Struevers' petition to contest were Alice's 2002 will and trust agreement and Pete's 2002 trust agreement. The Struevers' petition did not explain why Pete's 2002 will was not attached. The Struevers requested that the trial court set aside the 2007 will and distribute Pete's estate according to his 2002 will.

¶ 6      In January 2015, Herren filed a motion to dismiss the Struevers' amended petition. Herren argued that the Struevers' petition failed to meet the pleading requirements of section 2-603 of the Code of Civil Procedure (735 ILCS 5/2-603 (West 2014)) and the mailing requirements of section 8-1(b) of the Probate Act of 1975 (755 ILCS 5/8-1(b) (West 2014)). In March 2015, Herren filed a supplement to her motion to dismiss, in which she added an additional argument: that the Struevers lacked standing to challenge the 2007 will. Citing *Schlenker*, Herren claimed that the Struevers could not establish standing as legatees to the 2002 will because the 2007 will explicitly revoked all prior wills, thus voiding the 2002 will and precluding any claim to standing that relied on it.

¶ 7      In June 2015, the trial court denied Herren's motion to dismiss. The court determined that the Struevers had standing as legatees to the 2002 will and as creditors to the 2007 will.

¶ 8      On July 9, 2015, Herren filed a motion to reconsider, reiterating her argument that, pursuant to *Schlenker*, any prior will of Pete's was revoked by his 2007 will and could not be relied upon to establish standing. In addition, Herren added an argument that the 2002 will

should be presumed to be revoked because it "has never been produced and its current existence is speculative."

¶ 9      In August 2015, the trial court conducted a hearing on Herren's motion to reconsider and, in September 2015, entered an order granting the motion. The court determined that under the supreme court's holding in *Schlenker*, Pete's 2002 will must be considered revoked and void and could not be used to establish standing. The court also accepted Herren's argument that the 2002 will must be presumed to be revoked because the Struevers produced no evidence establishing its existence or validity. Therefore, the court concluded that the Struevers lacked standing to challenge Pete's 2007 will as legatees. In addition, the court determined that the Struevers were not creditors of Pete's estate. The court therefore concluded that the Struevers did not have standing as "interested person[s]" under the Probate Act and granted Herren's motion to dismiss the Struevers' amended petition.

¶ 10      This appeal followed.

¶ 11                            II. ANALYSIS

¶ 12      The Struevers argue that the trial court erred by dismissing their petition to contest Pete's 2007 will for lack of standing. Specifically, the Struevers argue that they had standing to challenge Pete's 2007 will because they were legatees to Pete's 2002 will. Herren responds by arguing that under *Schlenker*, the Struevers cannot rely on their status under the 2002 will to establish standing because the 2007 will revoked all prior wills, thereby making the 2002 will void. Herren argues further that even if *Schlenker* does not preclude the Struevers' standing, the Struevers did not establish standing because they failed to attach the 2002 will to their petition to contest the 2007 will.

¶ 13              A. Standing in General and the Standard of Review

¶ 14      In Illinois, lack of standing is an affirmative defense that must be pleaded and proved by the defendant. The appropriate vehicle for alleging lack of standing is a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure, which permits involuntary dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). Lack of standing qualifies as an "affirmative matter" within the meaning of section 2-619(a)(9). *Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998. In this case, although Herren did not label her motion as a motion to dismiss under section 2-619(a)(9) (the motion was titled "motion to dismiss" and did not cite any section of the Code), we will consider it as such. *Cf. Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54, 962 N.E.2d 418 (considering a motion to dismiss asserting immunity as a section 2-619 motion, despite its label as a section 2-615 motion).

¶ 15      "The doctrine of standing ensures that issues are raised only by parties having a real interest in the outcome of the controversy." *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35, 965 N.E.2d 404. "A party must assert its own legal rights and interests, rather than assert a claim for relief based upon the rights of third parties." *Id.* ¶ 36. "The gravamen of standing is a real interest in the outcome of the controversy ***." *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 23, 43 N.E.3d 923.

¶ 16      The respondent bears the burden to plead and prove lack of standing. *Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998. Accordingly, a plaintiff need not allege facts establishing standing.

*Id.* When standing is challenged in a section 2-619(a)(9) motion to dismiss, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *Id.* The court should grant the motion to dismiss only if the plaintiff could prove no set of facts that would support a cause of action. *Id.*

¶ 17   An order granting a motion to dismiss for lack of standing presents a question of law that we review *de novo*. *Id.*

¶ 18                                B. Standing Under the Probate Act

¶ 19   Although standing is generally a "common law concept" (*In re N.C.*, 2014 IL 116532, ¶ 42, 12 N.E.3d 23), standing under the Probate Act of 1975 is entirely a creature of statute. *Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998. Pursuant to section 8-1(a) of the Probate Act, "any interested person" may file a petition to contest the validity of a will. 755 ILCS 5/8-1(a) (West 2014). The Probate Act defines an "interested person" as the following:

> "one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, including *without limitation* an heir, *legatee*, creditor, person entitled to a spouse's or child's award and the representative." (Emphases added.) 755 ILCS 5/1-2.11 (West 2014).

¶ 20             C. Case Law Prior to *Schlenker* Concerning Standing of Legatees

¶ 21   Until recently, Illinois courts were in agreement that a legatee under a previously executed will could file a petition to contest a subsequent will so long as the legatee had " 'a direct, pecuniary, existing interest which would have been detrimentally affected by the probate' of a subsequent will." *In re Estate of Malcolm*, 234 Ill. App. 3d 962, 964-65, 602 N.E.2d 41, 43 (1992) (quoting *Kelley v. First State Bank*, 81 Ill. App. 3d 402, 413, 401 N.E.2d 247, 255 (1980)); see also *In re Estate of Keener*, 167 Ill. App. 3d 270, 521 N.E.2d 232 (1988); *In re Estate of Watson*, 127 Ill. App. 3d 186, 468 N.E.2d 836 (1984); *In re Estate of King*, 91 Ill. App. 2d 342, 348, 235 N.E.2d 276, 279 (1968) ("petitioners, as devisees and legatees of a prior will of the decedent, were 'interested persons' within the meaning" of the Probate Act); *Wilson v. Bell*, 315 Ill. App. 418, 43 N.E.2d 162 (1942).

¶ 22   Although *Keener*, 167 Ill. App. 3d 270, 521 N.E.2d 232, agreed with the general rule about a legatee's standing described above, it distinguished that rule, based on the specific facts of that case. In *Keener*, the decedent executed several wills and codicils. *Id.* at 271, 521 N.E.2d at 233. After the decedent's death, the petitioner challenged the decedent's final will, which was being probated. *Id.* The *Keener* court concluded that the petitioner lacked standing to bring the challenge because the petitioner did not have a pecuniary interest in the prior will that immediately preceded the will being probated. *Id.* at 274, 521 N.E.2d at 235.

¶ 23               D. *Schlenker*'s Interpretation of Standing Under the Probate Act

¶ 24   In *Schlenker*, 209 Ill. 2d 456, 808 N.E.2d 995, the decedent, Levi Schlenker, executed four separate wills before he died. He was survived by his two children, Troy and Imogene. Levi's fourth and final will—which granted Imogene nothing—was petitioned to probate, after which Imogene filed a petition contesting its validity. In response, the executor of the will, Troy, filed

a motion to dismiss the will contest under section 2-619(a)(9) of the Code, arguing that Imogene lacked standing to challenge the will.

¶ 25 Specifically, Troy argued that even if Imogene successfully challenged the final will, the earlier wills likewise granted her nothing. As a result, Imogene would need to successfully challenge all four wills before she could hope to receive any share of the estate, at which point she would take as Levi's heir under the intestacy statutes. Troy contended that, similar to the situation in *Keener*, because Imogene's petition challenged only the final will, the will contest provided her no possibility of obtaining an interest in Levi's estate. That is, even if Imogene's petition to contest the final will were successful, three prior wills still stood between her and the intestacy statutes. Therefore, Troy argued, Imogene lacked standing because she did not have a real interest in the outcome of the proceedings. The trial court agreed and granted Troy's motion to dismiss, but the appellate court reversed.

¶ 26 The supreme court agreed with the appellate court, providing three reasons why the prior wills did not affect Imogene's standing to contest the final will. The "more fundamental reason" was that Imogene had an unconditional right to challenge the will as Levi's heir. *Id.* at 464, 808 N.E.2d at 1000. The court noted that section 1-2.11 of the Probate Act defined an "interested person," as anyone whose financial interest may be affected by the will contest, "including without limitation an heir." (Emphasis and internal quotation marks omitted.) *Id.* at 466, 808 N.E.2d at 1001; 755 ILCS 5/1-2.11 (West 2002). The court interpreted that language to mean that "one's status as an heir is sufficient, in itself, to confer standing to contest a will's validity." (Internal quotation marks omitted.) *Schlenker*, 209 Ill. 2d at 466. That is, an heir need not establish in every case a tangible interest in challenging a will. Instead, the Probate Act creates a bright-line rule of law that a decedent's heir *always* has standing to challenge any will executed by the decedent. Therefore, because Imogene had an unconditional right to challenge Levi's will as his heir, any prior wills executed by Levi were irrelevant to the question of standing. *Id.* at 465, 808 N.E.2d at 1000.

¶ 27 Although the court's holding described above was sufficient to decide the case, the court included two additional reasons why Levi's prior wills did not affect Imogene's standing. The court's second reason for discounting Levi's three prior wills was that "our presumption must be that none of [the prior] wills have any legal effect." *Id.* at 463, 808 N.E.2d at 999. The court explained that Levi's final will contained a clause revoking all prior wills and that Levi had made no later effort to revive those wills. Thus, the court concluded that "[a]t this stage of the proceedings, we must therefore regard all of the prior wills as void." *Id.* Presuming that the prior wills were void, the court concluded that those wills could not affect Imogene's standing.

¶ 28 The *Schlenker* court then provided a third reason why the prior wills did not affect Imogene's standing: Troy's argument "assumes that Imogene would be no better off under any of the earlier wills" than she is under the final will. *Id.* The court explained that Levi's second will had never been produced and that his first will established a trust to provide for Imogene. As a result, Troy had not established his claim that Imogene would not take under any of the three prior wills and would need to successfully contest all four wills before she would receive an interest in Levi's estate. The court explained that Troy was "attempt[ing] to sidestep these deficiencies by shifting the burden of pleading and proof to Imogene." *Id.* at 464, 808 N.E.2d at 1000. The court reiterated that Troy, as the respondent, had the burden to plead and prove Imogene's lack of standing. The court concluded that Troy had failed to meet that burden and, therefore, his motion to dismiss should have been denied.

¶ 29    Justice Garman specially concurred, disagreeing with the majority's holding that the Probate Act grants an heir unconditional standing to challenge a will. *Id.* at 467-68, 808 N.E.2d at 1001-02 (Garman, C.J., specially concurring). Under Justice Garman's interpretation, an "interested person" under the Probate Act must have an "affected interest" in the particular proceedings. *Id.* at 467, 808 N.E.2d at 1001. According to Justice Garman, an heir who stood to receive the same share of an estate under the decedent's will as she would under the intestacy statutes would lack standing to challenge the will. Justice Garman explained that a contrary rule would allow for mischief: an heir without a legally cognizable interest in the proceedings could file a will contest to affect other parties' interests, possibly for personal, nonlegal reasons. *Id.* at 468, 808 N.E.2d at 1002.

¶ 30    Justice Garman also took issue with the majority's assertion that, because Levi's final will revoked all prior wills, the prior wills were void and could not be used to assess Imogene's standing. Justice Garman cited *Crooker v. McArdle*, 332 Ill. 27, 163 N.E. 384 (1928), for the proposition that a will is not effective for any purpose—including revoking other wills—until the will is admitted to probate. An order admitting a will to probate is not final until the time for filing a will contest has run. Therefore, the revocation clause in Levi's final will was not yet in effect when Imogene filed her will contest. As a result, the prior wills had not yet become void and should be considered when determining whether Imogene had an interest in challenging the final will. Justice Garman continued by noting that a contrary rule would contradict long-standing Illinois law and promote fraud. *Schlenker*, 209 Ill. 2d at 468-70, 808 N.E.2d at 1002-03 (Garman, C.J., specially concurring).

¶ 31                              E. Standing in This Case

¶ 32    The Struevers argue that the trial court erred by granting Herren's motion to dismiss the Struevers' petition to contest Pete's 2007 will. Specifically, the Struevers argue that they had standing as legatees to Pete's 2002 will. In response, Herren argues that *Schlenker* precludes standing for the Struevers as legatees to the 2002 will because the 2007 will revoked all prior wills.

¶ 33                 1. Schlenker *Does Not Proscribe Standing in This Case*

¶ 34    Herren argues that *Schlenker* stands for the proposition that a legatee under a prior will does not have standing to challenge a current will where the current will contains a clause revoking the prior will. We disagree with Herren's reading of *Schlenker*.

¶ 35    The "fundamental" holding of *Schlenker* was that under the Probate Act, an heir unconditionally has standing to contest a will. *Id.* at 464, 808 N.E.2d at 1000. In further support of that holding, the court went on to provide additional discussion unnecessary to its decision. *People v. Flatt*, 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515 (1980) (the precedential scope of a decision is limited to the facts before the court). That additional discussion included the following proposition: "At this stage of the proceedings, we must therefore regard all of the prior wills as void." *Schlenker*, 209 Ill. 2d at 463, 808 N.E.2d at 999. For the following reasons, we conclude that the aforementioned statement from *Schlenker* does not affect the Struevers' standing as legatees in this case.

¶ 36    The *Schlenker* court's presumption that the prior wills were void was based on the applicable burden of proof, instead of a broader statement about the power of a probated will to revoke prior wills. As the court explained, "*At this stage of the proceedings*, we must therefore

regard all of the prior wills as void." (Emphasis added.) *Id.* The court reached that conclusion because, "[a]t this stage of the proceedings, there is no evidence to support [the prior wills'] validity." *Id.* at 462, 808 N.E.2d at 999. Without any evidence of the prior wills' validity, the court concluded that its "presumption must be that none of those wills have any legal effect" because the final will included a clause revoking the prior wills. *Id.* at 463, 808 N.E.2d at 999. The critical aspect of the court's reasoning was that it was making a presumption against the respondent, Troy, and in favor of the plaintiff, Imogene. The burden of proof applicable when deciding a section 2-619 motion to dismiss required the court to "accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in plaintiff's favor." *Id.* at 461, 808 N.E.2d at 998. In *Schlenker*, one inference that could be drawn in Imogene's favor was that all the prior wills were void and therefore could not affect her standing. We read *Schlenker* less as establishing a new rule that *all prior revoked wills must be considered void* than as reaffirming the well-established rule that *all inferences must be drawn in the plaintiff's favor* when considering a section 2-619 motion to dismiss.

¶ 37    Our reading of *Schlenker* is buoyed by that court's reasoning immediately following its decision to consider the prior wills as void. The court went on to consider the possibility that those prior wills might instead be valid, in direct contradiction of its previous statement that it was presuming that the prior wills were void. The court considered that the prior wills might grant Imogene an interest in Levi's estate greater than she would take under the final will, which would create a direct financial interest in Imogene's challenging the final will. The court explained that Troy had not met his burden to prove that the prior wills did not grant Imogene such a direct interest. The court concluded that Troy was attempting "to sidestep these deficiencies by shifting the burden of pleading and proof to Imogene." *Id.* at 464, 808 N.E.2d at 1000. The court reiterated that it was Troy's burden to plead and prove lack of standing.

¶ 38    The common thread tying together the *Schlenker* court's reasoning is that Troy, as the respondent, had the burden to plead and prove lack of standing. Accordingly, all inferences were required to be drawn in Imogene's favor. *Schlenker* involved a factual scenario in which contrary inferences could be drawn in Imogene's favor—first, that the prior wills were void and, second, that the prior wills gave Imogene a greater interest than the final will. The court therefore considered both those presumptive possibilities in reaching its decision. Because the *Schlenker* court's reasoning was based on the inferences that could be drawn in the plaintiff's favor, we decline to extrapolate any broader legal holding about the efficacy of revocation clauses from its analysis.

¶ 39    We also find compelling the long-standing case law prior to *Schlenker* providing that a legatee under a prior will has standing to contest a subsequent will. See *Malcom*, 234 Ill. App. 3d 962, 602 N.E.2d 41; *Watson*, 127 Ill. App. 3d at 189, 468 N.E.2d at 837 ("It has been held that legatees of a prior will of a decedent, even though not heirs at law, are 'interested' persons within the meaning of the [Probate] Act."); *Kelley*, 81 Ill. App. 3d 402, 401 N.E.2d 247; *King*, 91 Ill. App. 2d 342, 235 N.E.2d 276. We find it hard to fathom that the majority in *Schlenker* set out to create a rule that would make such a drastic change to established precedent without acknowledging as much.

¶ 40    We also find it difficult to conclude that the supreme court intended, as a matter of law, to prohibit a legatee under a prior will from challenging a subsequently executed will containing a revocation clause. Prior legatees have the kind of "real interest in the outcome" of the controversy that is generally sufficient to establish standing. *Powell*, 2012 IL 111714, ¶ 35,

965 N.E.2d 404 (describing the general requirements for standing). Legatees are asserting their "own legal rights and interests" rather than the rights of a third party. *Id.* ¶ 36. A rule holding that legatees cannot challenge a will containing a revocation clause would prevent potentially interested parties from challenging suspect wills.

¶ 41   Further, unlike the factual scenarios in *Schlenker* and *Keener*, in this case, no intervening wills stood between the challenged 2007 will and the 2002 will, under which the Struevers claimed to be beneficiaries. That is, if the Struevers successfully challenged the 2007 will, no other obstacle prevented them from immediately seeking to probate the 2002 will. The Struevers therefore have the "direct, pecuniary, existing interest" in their will contest that the petitioner lacked in *Keener*, 167 Ill. App. 3d at 271, 521 N.E.2d at 234.

¶ 42   In addition, we agree with the point made in Justice Garman's special concurrence that a will's clause revoking all prior wills does not become effective until the will is successfully probated. In *Crooker*, 332 Ill. at 29-30, 163 N.E. at 385, the supreme court held that "no will is legally effective until it has been admitted to probate. No will can be shown to revoke a previous will until the subsequent will has been admitted to probate." As we noted earlier, *Schlenker* did not explicitly overrule that holding.

¶ 43   The rule stated in *Crooker* that no part of a will becomes effective until the will is probated makes perfect sense. Certainly, a will's revocation clause could not and should not be effective if the will was the product of undue influence. And we do not know whether the will was the product of undue influence until the will is successfully admitted to probate. Again, we construe the *Schlenker* court's presumption that the prior wills were voided by the revocation clause as a necessary presumption because of the burden of proof and not a holding that prior wills cannot be used to establish standing to challenge a subsequent will containing a revocation clause.

¶ 44   Because the Struevers do not raise the argument, we have no need to determine whether section 1-2.11 of the Probate Act (755 ILCS 5/1-2.11 (West 2014)) provides standing to legatees as a matter of law, regardless of whether a legatee has an actual pecuniary interest in the outcome of the will contest.

¶ 45                  *2. Herren Did Not Meet Her Burden to Establish Lack of Standing*

¶ 46   Applying the foregoing principles to this case, we conclude that Herren failed to meet her burden to establish the Struevers' lack of standing. As explained above, according to facts pleaded in the Struevers' petition to contest the 2007 will, they were legatees with standing to challenge Pete's 2002 will. Herren claims that we must presume that the 2002 will is revoked because the Struevers have failed to attach it to their petition to contest. However, Herren's argument is contrary to the appropriate burden of proof. At this stage of the proceedings, the Struevers did not have the burden to plead and prove standing. Instead, Herren had the burden to plead and prove the Struevers' lack of standing. Herren did not meet that burden. As a result, her motion to dismiss the Struevers' petition to contest the 2002 will should have been denied.

¶ 47   Because we find that Herren's motion to dismiss should have been denied based on the Struevers' standing as legatees, we need not address the Struevers' standing as creditors.

¶ 48                              III. CONCLUSION

¶ 49         For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

¶ 50         Reversed and remanded.