# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Lay*, 2018 IL App (3d) 170378

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF EUGENE ELWYN LAY, Deceased (Beverly Ann Bateman Kelton, Petitioner-Appellant, v. Delbert Miller, Executor, Respondent-Appellee). |
| District & No. | Third District<br>Docket No. 3-17-0378 |
| Filed | September 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 16-P-49; the Hon. Ronald J. Gerts, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Mark R. Steffen, of Kankakee, for appellant.<br><br>David M. Jaffe, of Kankakee, and Jerome C. Shapiro, of Aroma Park, for appellee. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Lytton and Wright concurred in the judgment and opinion. |

¶ 1 The petitioner, Beverly Ann Bateman Kelton, filed a petition to contest the will of the decedent, Eugene Elwyn Lay. The circuit court dismissed the petition after finding that Kelton was not an interested person under the Probate Act of 1975 (Probate Act) (755 ILCS 5/1-1 *et seq.* (West 2016)) and lacked standing to contest the will. Kelton appealed, alleging that the court's decision was erroneous. We reverse and remand for further proceedings.

¶ 2 FACTS

¶ 3 Lay died in Kankakee on January 29, 2016. He executed a will one day prior to his death in which he left the entirety of his estate to Delbert Miller, who was also nominated as executor of the estate. The will was signed by two witnesses whose signatures are illegible. A petition for probate was filed on March 9, 2016. The will was admitted to probate the next day with letters of office as executor issued to Miller.

¶ 4 On September 8, 2016, Kelton timely filed a petition to contest the validity of Lay's 2016 will. Kelton stated that she was the sister of Lay's wife, Billie, who had predeceased Lay. The petition alleged that except for a $2000 gift to Miller, Lay's previous will had left the entirety of his estate to Kelton and her siblings. The petition questioned the soundness of Lay's mind at the time he executed the 2016 will and also alleged that (1) Lay "was suffering from lung cancer and *** was not receiving medical treatment, but may have received hospice or other palliative care"; (2) Lay was "suffering from various mental and physical infirmities and illnesses *** and had been recently administered status altering medication"; (3) at the time the 2016 will was executed, Miller and his daughter were managing some of Lay's financial affairs and were therefore fiduciaries; (4) Kelton had spoken to Lay on January 27, 2016—two days before his death and one day before the challenged will was signed—but he was too weak and disoriented to respond; (5) the 2016 will did not provide for Lay's family "nor for [Kelton] who [*sic*] he treated like a sibling and referred to as his family"; (6) Miller and his daughter improperly influenced Lay to execute the 2016 will; and (7) the 2016 will was not published nor was it witnessed by two independent persons because one of the witnesses was Miller.

¶ 5 Miller filed a motion to dismiss Kelton's petition pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), alleging that she lacked standing because she failed to attach a copy of the prior will and an affidavit stating facts to show that the original was not accessible to her. The motion also alleged that Kelton was not an interested person under the Probate Act.

¶ 6 Kelton requested and received leave to file a copy of Lay's prior will. This will was dated July 3, 1979, and left the entirety of his estate to his wife. If she predeceased him, the will provided, in relevant part, for the following distribution: (1) $2000 to Miller and (2) the remainder of his estate in equal shares to the brothers and sisters of his wife, which included Kelton. Lay also nominated his wife to be executrix, with Kelton named as the successor.

¶ 7 The circuit court heard arguments on May 11, 2017, and issued a written decision four days later. The court found that Kelton failed to meet her burden of proving that the prior will was unrevoked at the time of Lay's death, she was not an interested person under the Probate Act, and she lacked standing to contest the 2016 will.

¶ 8        Kelton appealed.

¶ 9                                   ANALYSIS

¶ 10        On appeal, Kelton argues that the circuit court erred when it granted the motion to dismiss her petition. Specifically, she claims that, as a legatee under the previous will, she is an interested person under the Probate Act with standing to contest the 2016 will. She also denies any requirement that she produce the original of the 1979 will or prove that it was still valid.

¶ 11        This appeal challenges the grant of respondent's section 2-619 motion to dismiss. Our review is de novo. *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004).

¶ 12        In relevant part, section 2-619 of the Code allows a defendant to file a motion for involuntary dismissal based on an allegation "[t]hat the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). An allegation that a plaintiff lacks standing to bring his or her claim constitutes an affirmative matter that can be asserted under section 2-619(a)(9). *Schlenker*, 209 Ill. 2d at 461. The burden of pleading and proving an affirmative defense always rests with the person asserting it. *Id.* Not only does a plaintiff faced with a standing challenge have no duty to allege facts or present evidence to establish his or her standing to sue, "a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in plaintiff's favor." *Id.*

¶ 13        Standing to sue requires an injury in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The doctrine of standing requires that a party assert his or her own legal rights and interests, rather than the rights and interests of third parties. *In re Estate of Schumann*, 2016 IL App (4th) 150844, ¶ 15. The purpose of the standing requirement is to "ensure[ ] that issues are raised only by parties having a real interest in the outcome of the controversy." (Internal quotation marks omitted.) *Id.*

¶ 14        In the probate context, standing to contest a will comes not from the common law, but from statute. *Id.* ¶ 19. Pursuant to section 8-1(a) of the Probate Act, within six months of the admission of a will to probate, any "interested person" may file a petition to contest the validity of that will. 755 ILCS 5/8-1(a) (West 2016). Section 1-2.11 of the Probate Act defines "interested person" as "one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, including without limitation an heir, legatee, creditor, person entitled to a spouse's or child's award and the representative." *Id.* § 1-2.11.

¶ 15        Prior to our supreme court's 2004 decision in *Schlenker*, Illinois law was clear that a legatee under a previously executed will had standing to contest a subsequently executed will as long as the legatee had section 1-2.11's requisite interest in the outcome of the matter. *Schumann*, 2016 IL App (4th) 150844, ¶ 21. We do not read *Schlenker* as affecting the clarity of that law.

¶ 16        The question presented in *Schlenker* was whether an *heir* attempting to challenge a will could successfully assert a financial interest in a will contest when multiple wills in which she inherited nothing stood between her and either (1) a will further down the chain in which she *did* have an interest or (2) the interest she had by virtue of intestacy if all of the intervening wills were found invalid. The *Schlenker* majority held that an heir always has a

- 3 -

financial interest created by the potential, however tenuous, of the estate eventually passing by intestacy. *Schlenker*, 209 Ill. 2d at 466. In reaching its decision, the *Schlenker* majority expressly distinguished the situation of an heir from that of a legatee under a previous will. *Id.* at 465. Justice Garman's special concurrence challenged the majority's ultimate conclusion as rendering superfluous the portion of section 1-2.11 that required an affected interest. *Id.* at 467-68 (Garman, J., specially concurring). However, because she found, citing well-settled law, that the revocation clause in the most recent will had no effect until the will contest was complete, she concurred in the finding that the particular heir had an interest affected by the action. *Id.* at 468-69. The majority articulated no disagreement with the legal principles relied upon by Justice Garman.

¶ 17    *Schlenker* is not our case, and its issue is not our issue. Nor, as the Fourth District ultimately found in *Schumann*, was it that case. The facts and procedural history in *Schumann* and those in the instant case track one another in all salient respects. See *Schumann*, 2016 IL App (4th) 150844, ¶¶ 4-9. The Fourth District noted, as have we, that the "fundamental" holding of *Schlenker* was that an heir possesses an unconditional right to contest a will; that court also concluded that the remainder of the decision constituted *dicta*. *Id.* ¶ 35. Moreover, the Fourth District explained that the *Schlenker* court's presumption—that the probated will's revocation clause invalidated the previous wills—was based on the applicable burden of proof, rather than a broad statement of the power of revocation clauses in probated wills: "[w]e read *Schlenker* less as establishing a new rule that all prior revoked wills must be considered void than as reaffirming the well-established rule that all inferences must be drawn in the plaintiff's favor when considering a section 2-619 motion to dismiss." (Emphases omitted.) *Id.* ¶ 36. We agree. Reading *Schlenker* as the respondent proposes would effectively foreclose any legatee under a prior will from contesting a will, admitted to probate, which disinherits him or her. This is neither the effect nor the intent of long-settled Illinois law.

¶ 18    In the instant case, the will contest petitioner, Kelton, has alleged that she was a named beneficiary and successor executor under a will executed by the decedent in 1979 and in effect until the day before his death when he purportedly executed the will that had been admitted to probate. She claims that the 2016 will was executed without testamentary capacity and was the product of undue influence. Miller's motion to dismiss under section 2-619 challenged the petitioner's standing to maintain the will contest. The question presented to us is whether the petitioner has standing as a legatee under the decedent's immediately preceding will to pursue a will contest; in other words, whether Kelton had "a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved." 755 ILCS 5/1-2.11 (West 2016). Reduced to its essence, Kelton has standing in this case if she has something financial to gain if she prevails in the will contest or to lose if she does not.

¶ 19    Respondent was able to convince the circuit court that under *Schlenker*, the 2016 will presumptively revoked the 1979 will and that Kelton had the burden of proving that the 1979 will was unrevoked at the time of Lay's death. However, the circuit court's ruling—and Miller's argument on appeal—are premised on inapposite case law. The circuit court cited to *In re Estate of Koziol*, 366 Ill. App. 3d 171, 177 (2006), for the following proposition:

> "Where a last will and testament, after its execution, is retained by the testator and cannot be found upon his death, it is the well-settled rule of this and of the majority of

jurisdictions that it will be presumed to have been destroyed by him *animo revocandi*. [Citations.] The same cases establish that the presumption is subject to being rebutted by circumstances which tend to show a contrary conclusion, and that the burden is on one *seeking to probate such a will* to prove that it was unrevoked at the testator's death." (Emphasis added and internal quotation marks omitted.)

Unlike *Koziol*, this case does not involve an individual attempting to probate a will that could not be found. Kelton was not attempting to probate the 1979 will; she was attempting to challenge a will offered to probate by Miller. Accordingly, *Koziol* has no application to the instant case.

¶ 20    As previously stated, when ruling on a section 2-619 motion to dismiss for an alleged lack of standing, all well pled allegations in the complaint are taken as true, all presumptions and inferences are drawn in favor of the nonmoving party (Kelton), and it is the burden of the moving party (Miller) to prove a lack of standing. *Schlenker*, 209 Ill. 2d at 461. As the movant, Miller was not entitled to a presumption of the 1979 will's invalidity. See *Schumann*, 2016 IL App (4th) 150844, ¶ 46. Further, Kelton was not required to prove she had standing to contest the 2016 will. See *id.* These principles were not followed in this case. Consequently, the trial court's ruling runs afoul of long-established legal precedent and improperly insulates Lay's suspect will from the legal challenge of a potentially interested person. See *id.* ¶ 40.

¶ 21    For the foregoing reasons, we hold that the circuit court erred when it granted Miller's section 2-619 motion to dismiss, and we remand the case for further proceedings.

¶ 22                                          CONCLUSION

¶ 23    The judgment of the circuit court of Kankakee County is reversed, and the cause is remanded for further proceedings.

¶ 24    Reversed and remanded.